(January 10, 2006)

■ THE EDGE MANAGEMENT CONSULTING, INC., Plaintiff, v NANCY BLANK et al., Defendants. NANCY BLANK et al., Third-Party Plaintiffs-Appellants, v AUDREY IRMAS et al., Third-Party Defendants, and IAN BANKS, INC., et al., Third-Party Defendants-Respondents. NANCY BLANK et al., Third-Party Plaintiffs-Appellants-Respondents, v AUDREY IRMAS, Third-Party Defendant-Respondent-Appellant, et al., Third-Party Defendants. [807 NYS2d 353]—

Order, Supreme Court, New York County (Edward H. Lehner, J.), entered May 10, 2004, which, inter alia, granted the motions by third-party defendants Alan Wanzenberg Architect, P.C., Winds Mechanical, Inc., The Trump Corporation, The Trump Organization, the Board of Managers of 610 Park Avenue Condominium, Costas, Kondylis & Associates, P.C., Park 65th Associates, L.P. and HRH Construction Corp. to dismiss the third-party complaint as against them, unanimously affirmed, without costs. Order, same court and Justice, entered October 4, 2004, which, inter alia, denied the motion of third-party defendant Irmas seeking dismissal of the indemnification claim against her, unanimously modified, on the law, to grant Irmas's motion, and otherwise affirmed, without costs.

On January 25, 1999, the Blank Trust leased condominium unit 8E at 610 Park Avenue, New York, NY, to The Edge Management Consulting, Inc. for an initial term of 18 months commencing March 1, 1999. The duration of the lease was later extended.

On January 23, 2001, a water leak occurred in unit 9E which is located directly above unit 8E. This leak eventually resulted in the growth of mold, mold spores, and mold mushrooms in unit 8E. After a number of requests for the Blank Trust to fix the leak were ignored, Edge vacated the premises in July 2001, claiming that the conditions rendered the premises uninhabitable.

On July 1, 2002, Edge brought suit against the Blank Trust for the return of $90,000 in rental payments for the period of January through September of 2001, a $15,000 security deposit, $50,000 for equipment it claims was removed from unit 8E by the Blank Trust, and $100,000 in punitive damages.

On August 12, 2003, the Blank Trust commenced a third-party action against Audrey Irmas, the owner of unit 9E, and 13 other parties who were involved in renovations of Irmas's unit and the conversion of the building into condominiums. The Blank Trust claimed that the conditions of unit 8E were the sole fault of third-party defendants for their negligence in renovation and construction on unit 9E, failure to properly service, maintain and inspect the heating, ventilation and air conditioning in unit 9E, and negligence in renovation and construction of the building when it was converted into a condominium. The Trust claimed recovery under contribution, contractual indemnity, and common-law indemnity theories.

By order entered May 10, 2004, the court granted a motion by third-party defendant Costas, Kondylis & Associates, P.C. (CKA) to dismiss the third-party complaint against it. Subsequent to CKA's motion, Alan Wanzenberg Architect, P.C. (AWA), Winds Mechanical, Inc. (Winds), The Trump Corporation and The Trump Organization (collectively Trump), the Board of Managers of 610 Park Avenue Condominium, Park 65th Associates, L.P. (Park Associates), and HRH Construction Corp. (HRH) all cross-moved to dismiss the third-party complaint on the same grounds as CKA. The court granted all of the cross motions as well in the May 10, 2004 order.

The motions to dismiss were predicated on contentions that: (1) Edge seeks recovery for purely economic losses from the Blank Trust and contribution is not available for such losses, but only for personal injury, injury to property, and wrongful death; (2) the Blank Trust admitted that it had no contract

with any of the third-party defendants, which is a necessity in a contractual indemnification claim; and (3) since Edge only seeks to hold the Blank Trust liable for causing economic damages arising from its breach of the leasehold obligation to keep unit 8E in safe condition, and not vicariously liable for a statutory violation, common-law indemnification is not available. These same arguments were later adopted by third-party defendant Irmas in her motion to dismiss. However, by order entered October 4, 2004, the court ruled the Trust's contractual indemnification as against her was sustained.

### Defendant and Third-Party Plaintiff's Appeal

The Blank Trust first contends that common-law indemnification is not solely available in cases where the defendant is held vicariously liable by statute, but rather any "defendant whose liability to an injured plaintiff is merely secondary or vicarious is entitled to common-law indemnification from the actual wrongdoer who by actual misconduct caused the plaintiff's injuries, and whose liability to the plaintiff is therefore primary" (*Menorah Nursing Home v Zukov*, 153 AD2d 13, 23 [1989], citing *Mauro v McCrindle*, 70 AD2d 77 [1979], *affd* 52 NY2d 719 [1980], and Restatement of Restitution § 76). The Blank Trust cites *Elkman v Southgate Owners Corp.* (246 AD2d 314 [1998]), as entitling it to indemnification as a lessor whose liability is entirely vicarious, and where the noxious condition was caused by a neighbor. In addition, the Blank Trust contends that even if common-law indemnification was only available to parties whose vicarious liability is derived from statute, it would nevertheless qualify. This argument rests on the premise that Edge is seeking to hold the Blank Trust liable for a breach of the warranty of habitability, a statutory obligation under Real Property Law § 235-b.

In *Elkman* (*supra*) a landlord successfully sought indemnification from a neighboring fish retailer for odors that caused a tenant to sue the landlord for breach of warranty of habitability. This Court stated that "[c]ommon-law indemnification is available to one who has committed no wrong but is held liable to the injured party because of some relationship with the tortfeasor 'or obligation imposed by law,' (*Glaser v Fortunoff of Westbury Corp.*, 71 NY2d 643, 646), such as that upon a landlord under Real Property Law § 235-b" (246 AD2d at 314).

Though similar to the case at bar, *Elkman* simply stands for the proposition that a landlord may bring an indemnification claim when he or she has been sued for breach of warranty of habitability. Indemnification still rests on whether "the

landlord's fault contributed to the alleged noxious condition of the apartment" (*id.*). Moreover what distinguishes this case from *Elkman*, is that it involves a condominium and not just a rental apartment. We have specifically noted this distinction and its effect on the statutory warranty, holding that "[t]he warranty of habitability (Real Property Law § 235-b) does not apply to an individual unit within a condominium" (*Matter of Abbady [Mailman]*, 216 AD2d 115 [1995]).

Common-law indemnification is predicated on "vicarious liability without actual fault," which necessitates that "a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine" (*Trump Vil. Section 3 v New York State Hous. Fin. Agency*, 307 AD2d 891, 895 [2003], *lv denied* 1 NY3d 504 [2003] [internal quotation marks omitted]; *see Guzman v Haven Plaza Hous. Dev. Fund Co.*, 69 NY2d 559, 567 [1987]; *Consolidated Rail Corp. v Hunts Point Term. Produce Coop. Assn., Inc.*, 11 AD3d 341, 342 [2004]). The Blank Trust was under a contractual as well as statutory duty to maintain unit 8E in good repair under Multiple Dwelling Law § 78 and New York City Administrative Code § 27-2005. These statutory duties are enforceable against an owner of a condominium unit (*Kandell v Saunders*, 224 AD2d 185, 186 [1996]). If the Blank Trust is found liable in the main action, it will be because it failed in these duties and consequently shares part of the blame. Therefore, it is barred from obtaining indemnification.

### Third-Party Defendant-Respondent-Appellant's Appeal

Irmas contends that the Blank Trust was not an intended third-party beneficiary of the alteration agreement she entered into with the condominium's board of managers. Alternatively, if the Blank Trust was an intended beneficiary, Irmas argues it failed to properly plead the claim.

The Blank Trust did not specifically plead contractual indemnification as arising out of the alteration agreement, however, it did plead a claim of "contractual indemnification" against Irmas. Pleadings are afforded liberal treatment and this Court has repeatedly held that the focus is on whether the pleader has a cause of action, not whether it has properly stated one (*Barrows v Rozansky*, 111 AD2d 105, 107 [1985]). "Pleadings are entitled to a liberal construction and third-party complaints should withstand dismissal if there is any possibility of a recovery" (*North Colonie Cent. School Dist. v MacFarland Constr. Co.*, 60 AD2d 685, 686 [1977]; *and see 511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 151-152 [2002]).

Although the alteration agreement is not specifically described, the complaint puts Irmas on notice that she is being sued for contractual indemnification for rental losses caused by water damage resulting from the construction and renovations on her unit.

Irmas's contention that the court erred by allowing the submission and consideration of an "Amended Affirmation in Opposition" to her motion to dismiss is also baseless. The Blank Trust's Amended Affirmation was served on July 20, 2004, in accordance with the stipulation signed by all counsel, which provided that opposition papers to the motions to dismiss were due on July 21, 2004. Additionally, under CPLR 2214 (c), papers submitted in accordance with the service and filing requirements of CPLR 2214 (a) and (b) are read by the court. The Amended Affirmation was served more than seven days prior to the July 28, 2004 return date, which satisfies the relevant requirement of CPLR 2214 (b). Irmas was granted additional time to reply to the Amended Affirmation as well, thus ameliorating any possible prejudice.

Although the claim was properly pleaded, the Blank Trust must still be a third-party beneficiary of the alteration agreement to succeed on its claim for contractual indemnification. One who seeks to recover as a third-party beneficiary of a contract must establish that a valid and binding contract exists between other parties, that the contract was intended for his or her benefit, and that the benefit was direct rather than incidental (*see State of Cal. Pub. Employees' Retirement Sys. v Shearman & Sterling*, 95 NY2d 427, 434-435 [2000]; *Internationale Nederlanden [U.S.] Capital Corp. v Bankers Trust Co.*, 261 AD2d 117, 123 [1999]). "One is an intended beneficiary if one's right to performance is 'appropriate to effectuate the intention of the parties' to the contract and either the performance will satisfy a money debt obligation of the promisee to the beneficiary or 'the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance' " (*Roosevelt Islanders for Responsible Southtown Dev. v Roosevelt Is. Operating Corp.*, 291 AD2d 40, 57 [2001], quoting *Lake Placid Club Attached Lodges v Elizabethtown Bldrs.*, 131 AD2d 159, 161 [1987], quoting Restatement [Second] of Contracts § 302 [1] [b]).

Irmas asserts that she was under no obligation to perform for the Blank Trust's benefit and that her obligations under the alteration agreement were neither to satisfy a money debt, nor indicative of a clear indication to provide the Blank Trust with anything more than an incidental benefit. In determining

whether a third party was an intended beneficiary to a contract, the actual intent of the parties is critical. The best evidence of the contracting parties' intent is the language of the agreement itself (*see Chu v Dunkin' Donuts Inc.*, 27 F Supp 2d 171 [1998]; *Zelber v Lewoc*, 6 AD3d 1043, 1045 [2004]). On its face, the alteration agreement clearly indicates that the indemnity provision applied "to all persons, including, without limitation, the owners of other units in the Building."

The explicit wording of the agreement evidences an intent to indemnify other unit owners, such as the Blank Trust, against any and all loss that results from the renovations. The renovations took place, a leak occurred, and unit 8E was rendered uninhabitable causing the Blank Trust to lose rent monies. This is exactly the type of situation contemplated by the alteration agreement (*see e.g. Board of Mgrs. of Astor Terrace Condominium v Schuman, Lichtenstein, Claman & Efron*, 183 AD2d 488 [1992] [unit condominium owners were able to successfully assert that they were intended beneficiaries to a contract between engineering and design experts and the sponsor for construction on their building]).

The alteration agreement is a binding contract between Irmas and the Board of Managers, which was acting on behalf of all unit owners with the intent to impart to them a direct and immediate benefit. Strictly construed, the agreement clearly provides indemnification to the Blank Trust.

Irmas entered the alteration agreement with the intention of bestowing upon other unit owners a third-party benefit and that benefit inexorably extends to any loss resulting from the renovations to unit 9E. However, "[a]n indemnification agreement will be deemed void and unenforceable if the party seeking indemnification was itself negligent" (*Giglio v St. Joseph Intercommunity Hosp.*, 309 AD2d 1266, 1268 [2003], *as amended on reconsideration* 2 AD3d 1485 [2003]). The Blank Trust had a duty to maintain unit 8E in good repair under Multiple Dwelling Law § 78 and New York City Administrative Code § 27-2005. Because it failed to do so, the Blank Trust is at least partially negligent and thus may not recover from Irmas without explicit language in the indemnification agreement warranting against such negligence. The Court of Appeals has ruled that "unless the intention of the parties is expressed in unmistakable language, an exculpatory clause will not be deemed to insulate a party from liability for his own negligent acts" (*Gross v Sweet*, 49 NY2d 102, 107 [1979]; *see also Williams v J.P. Morgan & Co. Inc.*, 248 F Supp 2d 320, 325-326 [SD NY 2003] [under New York law, absent unmistakable and unequivocal language

exonerating a party from its own negligence, a contract will not be read to indemnify the party against it]).

In *Gross* (*supra*), a "Responsibility Release" was signed by the plaintiff that ostensibly relieved the defendant parachuting center of all liability for any possible injuries. The release was silent, however, on the matter of any negligence on the defendant's part. The court interpreted this as merely excusing the parachute center from responsibility for injuries that ordinarily and inevitably would occur without fault on the part of the center, and the release would not be taken as excusing a defendant from consequences of his own negligence. Irmas's alteration agreement contained language similar to the release in *Gross*. Though such clauses may seem to indemnify a party against even its own negligence, the language must evince an "unmistakable intent of the parties" to do so (*Kurek v Port Chester Hous. Auth.*, 18 NY2d 450, 456 [1966]). The alteration agreement did not specifically indemnify the Blank Trust against its own negligence and therefore we decline to interpret it in that manner. While it was not the Blank Trust's fault that the leak occurred, the Trust was under a duty to fix any condition posing a safety risk to its tenant. Once the water entered unit 8E and mold began to grow, it became the responsibility of the Blank Trust to remedy the situation. Therefore, the Blank Trust's claim for contractual indemnification fails. Concur— Buckley, P.J., Saxe, Nardelli, Williams and Catterson, JJ.