# United States Court of Appeals for the Federal Circuit

---

**ROMANOFF EQUITIES, INC.,**
*Plaintiff-Appellant*

**437-51 WEST 13TH STREET LLC,
LIRON REALTY, INC.,**
*Plaintiffs*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2015-5034

---

Appeal from the United States Court of Federal Claims in No. 1:11-cv-00374-NBF, Senior Judge Nancy B. Firestone.

---

Decided: March 10, 2016

---

MARK F. (THOR) HEARNE II, Arent Fox, LLP, Clayton, MO, argued for plaintiff-appellant. Also represented by MEGHAN SUE LARGENT.

EMILY M. MEEKER, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JOHN C. CRUDEN.

---

Before NEWMAN, LOURIE, and BRYSON, *Circuit Judges.*

BRYSON, *Circuit Judge.*

The High Line is an elevated "linear park" in New York City that runs along the west side of Manhattan from Gansevoort Street to 34th Street. The park, which is used for walking, jogging, and other recreational purposes, occupies the elevated viaduct of a former railway line. In 2005, the elevated viaduct was converted to a public recreational trail under the authority of the National Trails System Act, 16 U.S.C. §§ 1241-49. In this takings action, the appellant, Romanoff Equities, Inc., contends that the conversion of the railway property to a trail entailed a taking of its property without just compensation. The Court of Federal Claims held, on summary judgment, that the conversion did not result in a taking of Romanoff's property. We agree with the analysis of the trial court and therefore affirm.

I

In 1932 the New York State Realty and Terminal Company granted an easement to the New York Central Railroad Company ("the New York Central"), an affiliated entity, to allow for the construction and maintenance of an elevated railroad corridor on the west side of Manhattan adjacent to Tenth Avenue. The purpose of the elevated railroad was to replace the ground-level railroad then in use, in order to eliminate dangerous grade-level road crossings. The easement covered a roadway that ran above the street level and was wide enough for a rail line and associated stations.

The elevated railroad was constructed and operated for approximately 50 years. It ceased operations in the mid-1970s. By 1982 Conrail, then the successor to the New York Central, had removed the stations and tracks

along the roadway.  Various other uses for the property were considered, such as a highway or a waste disposal service, but were not implemented.  In 1989, the owners of property along the viaduct initiated an adverse abandonment proceeding before the Interstate Commerce Commission (the predecessor to the United States Surface Transportation Board), seeking to have the easement declared abandoned.  In 1992, the Commission ruled that an abandonment of the easement would be declared if the property owners filed a bond to cover demolition costs, but no such bond was filed.

In 1999, Romanoff acquired certain property that was traversed by the viaduct and was subject to the easement.  At that time, no determination had been made as to whether the viaduct would be removed or used for some other purpose.  Subsequently, a non-profit entity began urging that the viaduct be converted to use as a public space, subject to possible reactivation as a rail line.  Following negotiations with the City and the railroad company's successors, including Conrail and CSX, the Surface Transportation Board in 2005 issued a Certificate of Interim Trail Use for the elevated right of way.  Based on that authority, the viaduct was converted into the High Line Park.

In 2011, Romanoff filed suit in the Court of Federal Claims.  Romanoff principally contended that the easement originally granted to the railroad did not authorize the use of the rail corridor for park purposes.  For that reason, Romanoff argued that the conversion of the railroad viaduct into a park constituted an appropriation of Romanoff's property by the United States for which Romanoff was constitutionally entitled to be compensated.

The Court of Federal Claims rejected Romanoff's claim.  The court relied on the broad language of the original easement granted to the New York Central.  The language in question grants the railroad and "its succes-

sors and assigns forever, the permanent and perpetual rights and easements" within the described area, "together with the exclusive use of the portion of the parcels of land herein described . . . for railroad purposes *and for such other purposes as the Railroad Company, its successors and assigns, may from time to time or at any time or times desire to make use of the same.*" (emphasis added).

The court held that the broad grant of the easement "for such other purposes" as the railroad company and its successors desired to make of it, was broad enough to encompass the use of the property for a park. As a result, the court held, the easement did not terminate when the railroad company and its successors no longer used the property for railroad purposes. The court therefore concluded that Romanoff had no property rights that were terminated or impaired by the construction and maintenance of the High Line Park on the site where the railroad had previously operated. The court also rejected Romanoff's argument that the easement had been abandoned when the railroad company ceased using it for railroad purposes, and that all rights in the property had reverted to Romanoff before the Surface Transportation Board authorized its conversion into and use as a park.

## II

Romanoff's principal argument on appeal is that the 1932 easement granted to the New York Central was limited to railroad use and did not authorize the successors of the New York Central to use the property for other purposes, such as a park. That argument fails in light of the sweeping breadth of the easement grant. The easement was specifically not limited to the use of the property for railroad purposes, but stated that the property could be used "for railroad purposes and for such other purposes as the Railroad Company, its successors and assigns, may from time to time or at any time or times desire to make use of the same." As the Court of Federal

Claims held, it is not possible to read that language as limiting the easement to railroad purposes when it says, explicitly, that the easement applies *not only* if the property is used "for railroad purposes," *but also* if it is used "for such other purposes" as the railroad company and its successors and assigns may desire.

## A

Romanoff makes several arguments in support of its effort to escape the broad language of the easement grant, but none is persuasive.

First, Romanoff argues that under New York law, an easement is limited to the uses contemplated by the parties when the easement was granted.[1] Romanoff contends that the parties contemplated only that the property would be used for railroad purposes and that the easement cannot be construed to permit the use of the property for non-railroad purposes such as a park.

The problem with Romanoff's argument is that in determining the purpose for which an easement is granted, New York law requires that the intent of the parties be determined based on the language of the grant. *See Dowd v. Ahr*, 583 N.E.2d 911, 913 (N.Y. 1991) ("Easements by express grant are construed to give effect to the parties' intent, as manifested by the language of the grant."); *Edge Mgmt. Consulting, Inc. v. Blank*, 807 N.Y.S.2d 353, 368-69 (App. Div. 2006) (the terms of an agreement are the best evidence of the parties' intent). In this case, the language of the grant is not limited to railroad purposes, but expressly includes other purposes for which the

---

[1] "Property interests rely on the law of the state where the property is located," *Mildenberger v. United States*, 643 F.3d 938, 948 (Fed. Cir. 2011), so in this case we look to New York law to interpret the scope of the grant.

grantee or its successors may desire to use the property. Limiting the scope of the easement to the purposes revealed by the granting instrument is therefore of no help to Romanoff.[2]

Romanoff cites a number of cases for the proposition that the scope of an easement is limited to the purposes contemplated by the parties at the time of the agreement that created the easement. In each of those cases, however, the easement was limited to a specific purpose. None of the granting instruments contained language such as the language found in the easement at issue in this case, which not only does not limit the purpose for which the easement is granted, but explicitly states that the purposes extend to any purpose for which the grantee and its successors wish to use the property.

Romanoff's next argument is that the trial court's ruling as to the scope of the easement is at odds with the purpose of the easement, as determined from the entire 10-page granting document. Romanoff points out that

---

[2]    In its briefs, Romanoff quotes (nine times) the statement by the trial judge that "the parties at the time the easement was granted could not foresee use of the corridor for a public trail and park" as support for its contention that the parties to the easement did not intend the easement to be used for non-railroad purposes. In fact, however, the court's comment was directed to the quite different point that in light of the breadth of the grant, it did not matter that the specific purpose of use for a public trail and park was not in the parties' contemplation, as is clear from the full text of the court's statement ("Moreover, having agreed to allow the Railroad, its successors and assigns to use the corridor for any lawful purpose, it is irrelevant that the parties at the time the easement was granted could not foresee use of the corridor for a public trail and park.").

much of the document relates to the details of the proposed railroad use of the property, and the reference to other uses is found in only a single sentence. Romanoff states that upon reading the entire document, "it is impossible to honestly conclude Realty Company and New York Central Railroad intended the 1932 Easement to grant New York City the right to use the property for anything it 'desired.'" The problem with that argument is that New York City is clearly a "successor" to the New York Central,[3] and the document plainly authorizes such a successor to use the property "for such other purposes [as it may] desire to make use of the same." Thus, the text of the granting document is exactly contrary to Romanoff's argument that such a reading is "impossible."

Next, Romanoff argues that the use of the term "such" in the granting document limits the uses of the easement to railroad uses. The argument is that the term "such" is a limiting term that constrains the "other purposes" for which the easement can be used to railroad purposes. As an example of the limiting nature of the word "such," Romanoff offers the sentence "My sister doesn't particu-

---

[3] Romanoff briefly contends that New York City is not a "successor" to the New York Central, even though the property rights of the railroad were conveyed through several successors and ultimately to the City. Romanoff's contention is that when a right-of-way easement is granted to a railroad and the railroad's successors and assigns, the class of successors and assigns is limited to successor railroads. The case on which Romanoff relies for that proposition, however, was one in which the easement was specifically limited to railroad purposes. Where, as here, the easement is not limited to railroad purposes, there is no logical reason to construe the term "successor" to be limited to a railroad corporation with a franchise to operate the railway line, as Romanoff contends.

larly enjoy talking with such people," where the word "such" is limited to a group of people already identified.

While the term "such" can have a limiting effect in some settings, it does not have that effect in the context of the 1932 easement. There, context makes it quite clear that the word "such" is used to mean "any" or "whatever," and is not limiting. The phrase "for such other purposes as the Railroad Company . . . may . . . desire" means "for any purposes" or "for whatever purposes" the Railroad Company may desire, as in the sentence "You may invite your classmates, your roommates, and such other friends as you choose." In that setting the reference to "such other friends" is clearly not limited to classmates and roommates. Moreover, as the government aptly notes, this reading would result in the pertinent clause permitting the use of the property "for railroad purposes and such other railroad purposes," an interpretation that would be nonsensical.[4]

## B

Stepping back from analysis of the language of the easement, Romanoff makes the broader argument that New York law does not recognize a "general easement" that would permit the property in question to be used for any purpose. Romanoff does not point to any authority

---

[4] The term "such" is clearly used, elsewhere within the 1932 easement deed, to mean "any" or "whatever." For example, the deed gives the New York Central "the right, upon reasonable notice, to enter at reasonable hours in and upon the building, buildings or other structures above or below the Easement Area as to the particular parcel or parcels affected by said changes and to place therein *such* temporary shoring and blocking as may be reasonably required in making said changes." (emphasis added).

that stands for that proposition. Instead, Romanoff cites New York cases that simply stand for the proposition that the scope of an easement is limited to the specific use for which it is granted. Those cases do not stand for the proposition that an easement granted for any purpose for which the grantee wishes to use it would be unenforceable in New York.

In fact, the closest New York case suggests the opposite. That case, *Missionary Society of the Salesian Congregation v. Evrotas*, 175 N.E. 523 (N.Y. 1931), involved what the court called an "unusually broad" easement over the plaintiff's property. The easement granted not only rights of ingress and egress, but also permitted "a free and unobstructed use of the described land for passage of horses and vehicles of every kind and 'for all other lawful purposes.'" *Id.* at 524. The court held that the easement, "being in general terms, . . . must be construed to include any reasonable use to which the land may be devoted. . . . The only limitation is that all the uses must be lawful." *Id.* The court added that "[w]hen the terms of a grant are doubtful, the grantee may take the language most strongly in its favor." *Id.*

That decision of the New York Court of Appeals clearly signals that the New York courts will enforce easements by their terms and that a very broad easement, although "unusual," is not void simply because it extends not only to the specific purposes named in the easement, but to "all other lawful purposes." *See also Phillips v. Jacobsen*, 499 N.Y.S.2d 428, 429 (App. Div. 1986) ("easement granted in general terms must be construed to include any reasonable use to which it may be devoted, provided the use is lawful and one contemplated by the grant"); *Morgan v. Bolsan Realty Corp.*, 369 N.Y.S.2d 544, 546 (App. Div. 1975) ("A grantor of an easement may convey or retain that which he desires. In other words, he may create an extensive or a limited easement.").

In a context similar to this case, the New York Appellate Division recognized that when the conveyance of an easement is between related parties, it is not surprising for the grantor to give extensive rights to the grantee. *Morgan*, 369 N.Y.S.2d at 546. The fact that the grantor and grantee in this case were affiliated parties thus provides an additional reason for upholding the easement in accordance with the broad terms of the deed.

Romanoff next contends that even if the broad language of the easement were enforceable when the easement was granted, it became more limited by virtue of the parties' conduct in the more than 50 years that followed the execution of the grant. According to Romanoff, because the New York Central and its successors used the viaduct exclusively for railroad purposes during that period, the actual use of the property must be regarded as having defined the scope of the easement.

The cases on which Romanoff relies in support of this argument involve easements of ambiguous scope. In *Onthank v. The Lake Shore & Michigan Southern Railroad Co.*, 71 N.Y. 194 (1877), cited by Romanoff, the easement was "for the purpose of laying down and keeping in repair an iron pipe or conductor." The defendant installed a two-inch pipe; ten years later the defendant removed that pipe and replaced it with a four-inch pipe. Although the original grant did not specify where the grantee could lay the pipe or how large it could be, the court held that once the grantee "selected the place where it would exercise its easement thus granted in general terms, what was before indefinite and general became fixed and certain, and the easement could not be exercised in any other place." The scope of the grant thus became fixed through the actions of the parties, and the grantee was not allowed to replace the original pipe with a larger one, even though the original grant did not specify a width. The same is true of the later decision in *Dowd v. Ahr*, 583 N.E.2d 198 (N.Y. 1991).

In those cases, the courts applied the familiar princi-ple that the parties' course of conduct under an ambigu-ous agreement is evidence of the parties' understanding of the scope of that agreement. That principle has no appli-cation here, as there is no ambiguity in the scope of the easement. The fact that the property was used for rail-road purposes for some period of time after the grant does not suggest that the parties understood that the express right to use the property for other purposes would be forfeited by its longstanding use for railroad purposes.

## C

Finally, Romanoff argues that the trial court's holding as to the scope of the easement is "contrary to the under-standing of every party," including the railroad, the landowners, and New York City. Romanoff points in particular to the fact that before converting the viaduct into a park, New York City sought easements from the landowners to allow the viaduct to be used as a park. Such steps would not have been necessary, according to Romanoff, if the City had believed that the original ease-ment gave it the right to convert the viaduct into a park. The simple answer to that argument is that New York City likely sought such express easements in the hope of avoiding litigation such as this case, and that it reasona-bly expected that the easements would be granted be-cause of the value the High Line Park would add to the properties that abutted it.

## III

Romanoff's final argument is that the 1932 easement had terminated before the viaduct was converted into a park, and that the easement had reverted to the original owners and their successors, including Romanoff. Be-cause the property ceased being used for rail purposes in the early 1980s, Romanoff contends that there was no easement for Conrail to convey to its successors, including the City of New York.

This argument, like others made by Romanoff, depends on Romanoff's flawed assumption that the easement was limited to rail use in the first place. Because the easement was not so limited, Conrail's cessation of rail operations on the viaduct did not terminate its rights under the easement. While Conrail, or any successor, could have terminated the easement by abandoning any interest in the property altogether, Conrail never did so. Instead, Conrail expressed its interest in maintaining its rights in the property, which it ultimately passed on to the City as its successor. There being no indication of abandonment by Conrail or its successor, the easement did not terminate at any time as a matter of law.

Moreover, under New York law "abandonment does not result from nonuse alone, no matter how long"; it requires proof that the owner of the easement intended to abandon it and committed some overt act or failure to act indicating that the owner does not claim or retain any interest in the easement. *Janoff v. Disick*, 888 N.Y.S.2d 963, 966 (App. Div. 2009); *see also Gerbig v. Zumpano*, 165 N.E.2d 178, 180-81 (N.Y. 1960); *DeJong v. Abphill Assocs.*, 504 N.Y.S.2d 445, 447 (App. Div. 1986). As the trial court pointed out, Romanoff offered no evidence of such intent or acts of abandonment. Romanoff points to statements by several courts that the rail use was abandoned, but not that the easement was abandoned. Romanoff's claim of abandonment is therefore unsupported.

In sum, the easement granted to the New York Central in 1932 was broad enough to encompass the use of the viaduct for a trail and park. Nothing was done to terminate that easement. Accordingly the trial court properly held that Romanoff did not at any time acquire a property interest in the viaduct easement that was taken by the United States and for which Romanoff is entitled to compensation.

**AFFIRMED**