# United States Court of Appeals for the Federal Circuit

---

**STIMSON LUMBER COMPANY,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2022-1201

---

Appeal from the United States Court of Federal Claims in No. 1:18-cv-00983-NBF, Senior Judge Nancy B. Firestone.

---

Decided: October 2, 2023

---

THOMAS SCOTT STEWART, Stewart Wald & Smith, LLC, Kansas City, MO, argued for plaintiff-appellant. Also represented by ELIZABETH MCCULLEY.

KATELIN SHUGART-SCHMIDT, Environment and Natural Resources Division, United States Department of Justice, Denver, CO, argued for defendant-appellee. Also represented by TODD KIM.

---

Before DYK, REYNA, and CUNNINGHAM, *Circuit Judges*.

CUNNINGHAM, *Circuit Judge.*

This appeal originates from a rails-to-trails conversion in the state of Oregon, where Stimson Lumber Company ("Stimson") owns property subject to an easement. Stimson brought suit against the government in the United States Court of Federal Claims ("Claims Court"), seeking compensation for an alleged taking arising from the operation of the National Trails System Act Amendments of 1983 ("Trails Act"), 16 U.S.C. § 1247(d). Stimson claimed that the issuance of a Notice of Interim Trail Use ("NITU") allowing interim trail use and railbanking constituted a Fifth Amendment taking. The Claims Court held that interim trail use and railbanking was within the scope of the easement; the easement was not abandoned; and no taking occurred. *See Loveridge v. United States*, 148 Fed. Cl. 279, 283, 295 (2020) ("*Decision I*"); *Loveridge v. United States*, 150 Fed. Cl. 143, 145, 150–51 (2020) ("*Decision II*");[1] J.A. 53 (Rule 54(b) Judgment). We affirm.

## I.   BACKGROUND

On October 13, 1905, Articles of Incorporation were executed for the Pacific Railway and Navigation Company ("Railroad") with the plan of "construct[ing], equip[ping] and operat[ing] a line of railroad in the State of Oregon." J.A. 546–47, 550. On July 22, 1907, the Western Timber Company ("Western Timber") executed a deed transferring to the Railroad the land right relevant to this appeal. J.A. 198. The deed ("Stimson's deed") states in relevant part:

> Western Timber Co. . . . does hereby bargain, sell, grant, convey and confirm to the Pacific Railway and Navigation Company, a Corporation, and to its

---

[1]   These decisions also involved other landowners, deeds, easements, properties, and other issues that are not at issue in this appeal. *See Decision I* at 286–94; *Decision II* at 146, 151.

> successors and assigns forever, all of the following described real property situate in the County of Washington, State of Oregon, to-wit: – [description of the land]
>
> . . .
>
> Together with the tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining. Reserving, however, unto the said Western Timber Co., its successors and assigns, the right to cross said right of way at any point or points where such crossing is desired. TO HAVE AND TO HOLD unto the said Pacific Railway and Navigation Company, and to its successors and assigns forever.

*Id.* Stimson and the government agree that Stimson owns land in Oregon covered by Stimson's deed and that the deed provided the Railroad with an easement for the land relevant to this appeal. *See* Appellant's Br. 4–5; Appellee's Br. 8. The Port of Tillamook Bay Railroad ("POTB") later took over ownership of the railroad line. *See Decision I* at 282–83; J.A. 335–36.

A storm caused severe damage to the railroad line tracks in 2007. *See Decision II* at 145; J.A. 330, 353. In 2009, the POTB decided not to repair the damage caused to the tracks by the 2007 storm. *See Decision II* at 145; J.A. 353. The 2007 storm also led to the disbandment of the Oregon Tillamook Railroad Authority ("OTRA") in 2014 because the storm damage to the tracks impeded its goal of bringing the railroad up to certain track safety standards. *See Decision II* at 145–46; J.A. 354–55. The next year, the POTB entered into an inter-governmental agreement with numerous Oregon governmental entities to establish the Salmonberry Trail Intergovernmental Agency ("STIA"), to construct "a new multi-use trail"—the Salmonberry Trail— that would "connect[] to a wide network of existing

recreation[al] trails and parks, educational opportunities, and heritage sites" over portions of the railroad line.  J.A. 356–57, 361; *see Decision II* at 146.

In May 2016, the POTB filed with the Surface Transportation Board ("STB") a notice of intent to "terminate (abandon) service" of the portions of the railroad line at issue.[2]  J.A. 329; *see Decision II* at 145.  Shortly thereafter, the STIA filed with the STB a request for issuance of a NITU under the Trails Act.  *See* J.A. 333–34; *Decision II* at 146.  The POTB and STIA executed a trail use agreement on April 6, 2018.  *See* J.A. 376–77, 403; *see also Decision II* at 146; J.A. 378–402.

Stimson filed a complaint at the Claims Court against the government, alleging that the creation of the Salmonberry Trail gave rise to a taking under the Fifth Amendment.  *See* J.A. 59–61.  After the Claims Court found that Stimson's deed conveyed an easement such that Stimson had a potential claim for compensation, both parties filed motions for partial summary judgment concerning the scope of the conveyed easement.  *See Decision I* at 282–83.  The Claims Court granted the government's partial summary judgment motion and denied Stimson's partial summary judgment motion, finding railbanking and interim trail use to be within the scope of the easement.  *See id.* at 283, 295.  The parties then filed cross motions for partial summary judgment on whether a taking nonetheless occurred due to abandonment.  *See Decision II* at 145.  The Claims Court granted the government's motion and denied Stimson's motion, finding that Stimson failed to show abandonment for all purposes and therefore no taking

---

[2]    The effective date of the notice of intent was July 28, 2016.  J.A. 329.  The STB has regulatory authority over rail carriers who intend to discontinue or abandon any part of their railroad line.  49 U.S.C. §§ 10501(b), 10903.

occurred. *See id.* at 145, 150–51. Accordingly, the Claims Court concluded that Stimson had no compensable property interest in the land to which the deed pertained and entered a final judgment under Federal Rule of Civil Procedure 54(b) in favor of the government. *See* J.A. 53.

Stimson timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II. STANDARD OF REVIEW

"Whether a taking has occurred is a question of law based on factual underpinnings." *Chi. Coating Co., LLC v. United States*, 892 F.3d 1164, 1169 (Fed. Cir. 2018) (citation omitted). However, summary judgment is "in all respects reviewed *de novo.*" *Cienega Gardens v. United States*, 331 F.3d 1319, 1328 (Fed. Cir. 2003) (citation omitted). Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Chi. Coating*, 892 F.3d at 1169. Additionally, "[t]he nature or scope of a compensable property interest in a takings analysis is a question of law," which we review de novo. *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1351 (Fed. Cir. 2013) (citations omitted).

## III. DISCUSSION

On appeal, Stimson raises two arguments. First, Stimson argues that Stimson's deed granted an easement limited to railroad purposes. *See* Appellant's Br. 15. Second, Stimson argues that the Railroad abandoned the easement prior to the NITU. *See id.* at 40–41. We address each argument in turn.

### A. Scope of Easement

Stimson argues that the deed conveyed an easement for railroad purposes only. *See id.* at 15. Stimson first urges us to look to the surrounding circumstances at the

time of the grant to find the easement restricted to railroad purposes only. *See id.* at 20–21. Stimson further contends that an easement must be made for a particular purpose and an easement to a railroad company must be for railroad purposes. *See id.* at 29–31. The government counters that the text of the deed expresses a clear intent to convey a broad, unambiguous right of way easement not limited to railroad purposes. *See* Appellee's Br. 14–16. Thus, the government contends that Stimson's reliance on other legal sources cannot overcome this clear intent under Oregon law. *See id.* at 18–21. The government also disagrees with Stimson's argument that an easement to a railroad company must be restricted to railroad purposes. *See id.* at 21–22. Because the easement is unrestricted, the government argues that railbanking and interim recreational trail use falls within the scope of the easement. *See id.* at 22–23. We agree with the government.

"We analyze the property rights of the parties in a rails-to-trails case under the relevant state law," here, Oregon law. *Rogers v. United States*, 814 F.3d 1299, 1305–06 (Fed. Cir. 2015) (citing *Preseault v. United States*, 100 F.3d 1525, 1543 (Fed. Cir. 1996) (en banc) ("*Preseault II*")). The first step is "to declare the meaning of what is written in the instrument." *Tipperman v. Tsiatsos*, 964 P.2d 1015, 1019 (Or. 1998) (citation omitted). "If those terms clearly express the easement's purpose, our analysis ends." *Watson v. Banducci*, 973 P.2d 395, 400 (Or. Ct. App. 1999) (citations omitted); *see Tipperman*, 964 P.2d at 1019. Indeed, "if an easement is granted in general and unlimited terms, the parties intended the easement to include unrestricted reasonable use." *Stone v. CCXL, LLC*, 506 P.3d 1167, 1178 (Or. Ct. App. 2022) (citing *Criterion Ints., Inc. v. Deschutes Club*, 902 P.2d 110, 113 (Or. Ct. App. 1995)). But if ambiguity remains after examining the easement's express language, Oregon courts "look to relevant surrounding circumstances" for parties' intent, including "the easement's purpose, the circumstances existing at the time of

the grant, and the manner in which the original parties used the easement." *Watson*, 973 P.2d at 400 (citations omitted); *see Stone*, 506 P.3d at 1178.

The crux of the parties' arguments as to the scope of the easement is whether the purpose of the deed is clear from its express terms, or whether we must turn to surrounding circumstances to illuminate the deed's purpose. We find that the purpose of the deed here is clear from its express terms and plainly covers unrestricted reasonable use. *See Criterion*, 902 P.2d at 113. The deed states in pertinent part:

> Western Timber Co. . . . bargain[s], sell[s], grant[s], convey[s] and confirm[s] to the Pacific Railway and Navigation Company, . . . *all of the following described real property* . . . [t]ogether with the tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining. Reserving, however, unto the said Western Timber Co., . . . the right to cross *said right of way* at any point or points where such crossing is desired.

J.A. 198 (emphases added). Because the deed conferred an easement for a right of way "written in general terms without limitations," the express terms of the easement allow "unlimited reasonable use." *Criterion*, 902 P.2d at 112–13 (quoting *Verzeano v. Carpenter*, 815 P.2d 1275, 1278–79 (Or. Ct. App. 1991)).

In cases where the deed at issue contained a similar express grant without any limitations, Oregon courts have repeatedly found the easement's purpose to be unrestricted. For example, in *Long v. Sendelbach*, the Oregon Court of Appeals found that an easement "contained no restrictions of any kind" when the deed provided for "[t]he grantor herein to have the use of said right of way and of the bridge which the grantee herein agrees to build on said right of way." 641 P.2d 1136, 1137–38 (Or. Ct. App. 1982).

Similarly, in *Verzeano*, the deed reserved an easement, stating "reserved for road purposes for access [and] egress to and from lands belonging to the grantor." 815 P.2d at 1276. Moreover, the easement was not limited to agricultural purposes and instead permitted "unlimited reasonable use." *Id.* at 1278–79. In *Criterion*, the court found a deed conveying "the right to use, at any and all times, [an easement over the hill road]" constituted an easement for access, but "the purposes for which the grantee may invoke its right to access [we]re unambiguously left unrestricted." 902 P.2d at 111, 113 (first alteration in original). The deed here employs a similarly unrestricted conveyance.

Our conclusion is further supported by differences in the deed language governing other easements for the same railroad that are not at issue in this appeal, where the Claims Court found those easements to be restricted to railroad use. For example, the Claims Court found that the Carstens 72/530 deed and Turner 72/528 deed "explicitly convey[ed] easements for a 'railway and transportation purpose.'" *Decision I* at 286–87 (explaining that the deeds state, in pertinent part, "*as long as used and operated for railway and transportation purposes*"). Likewise, the Byrom 5/310 source deed explicitly identified the purpose of the easement as "the right to build, maintain and operate thereover a railway and telegraph line." *Id.* at 289. Express language limiting the purpose of the easement is lacking in Stimson's deed.

Stimson's arguments to the contrary are unpersuasive. First, we are not convinced by Stimson's argument that this court must look at the circumstances under which the deed was granted, which allegedly merit a finding that the easement's scope covers railroad use only. *See* Appellant's Br. 20–22. Stimson urges us to look at the 1905 Articles of Incorporation of the Railroad, which states that the purpose of the formation of the Railroad was "to construct, equip and operate a line of railroad in the state of Oregon . . . and to acquire the necessary rights of way and

other property therefor." J.A. 546; *see* Appellant's Br. 23–24. Stimson argues that the Railroad's Articles of Incorporation provides important context to understanding the parties' underlying manifest purpose because the deed was executed less than two years after the Railroad executed the Articles of Incorporation. Appellant's Br. 24. Stimson further cites Oregon statutes concerning a railroad's acquisition of land as evidence of circumstances. *See* Appellant's Br. 25 n.18 (citing OR. CODE §§ 5074, 5075, 5095 (1902)); *id.* at 27–28 (citing OR. ANN. CODE § 5095 (1902)). Because the deed "clearly express[es] the easement's purpose," this court need not consider other evidence as to the surrounding circumstances. *Watson*, 973 P.2d at 400; *see Criterion*, 902 P.2d at 113 (declining to consider evidence of the circumstances when "*no* language in the easement limit[ed] the use for which access may be used"). Therefore, the Railroad's Articles of Incorporation and the Oregon statutes are irrelevant to this court's interpretation of the scope of easement.

Nor are we persuaded by Stimson's citation of several Oregon cases, which allegedly show that a court must examine the surrounding circumstances at the time the railroad was constructed when interpreting the deed at issue. *See* Appellant's Br. 17, 21–25 (citing cases). In *Bernards v. Link*, the deed conveyed a right that was "for its use as a right of way for a railroad." 248 P.2d 341, 342 (Or. 1952). Based on this clear statement of purpose, the court found that deed conveyed an easement. *Id.* at 343–44.[3]

---

[3] Stimson also relies on this court's citation of *Bernards* in *Preseault II*. Appellant's Br. 21 (quoting *Preseault II,* 100 F.3d at 1535). But this court's discussion in *Preseault II* was premised on there having been a clear statement of purpose in the deed in *Bernards*. *Preseault II*, 100 F.3d at 1535. Moreover, *Preseault II*'s discussion of how to

Similarly, in *Watson*, the court interpreted the easement's scope to be limited to "a road . . . crossed by gates" because the easement contained a "purpose clause" stating the intent to convey "an easement for a gateway road." 973 P.2d at 400. Here, Stimson's deed lacks any unequivocal statement of purpose like those in *Bernards* and *Watson*.[4]

Stimson next contends that, as a matter of law, an easement must be made for a specific purpose, which means that an easement made to the Railroad must be made for railroad purposes. *See* Appellant's Br. 29–33. But the authorities cited by Stimson for this proposition do not support that an easement to a railroad company must automatically be for railroad purposes.[5] Nor was it an error for the Claims Court to find the easement to be for "right-

---

construe the purpose of railroad's acquisition of land is limited to "*Vermont* cases." *Id.* (emphasis added).

[4] Stimson's citation to *Egaas v. Columbia County* is also unavailing. Appellant's Br. 25 n.19. *Egaas* discussed the interpretation of a condemnation judgment rather than a deed similar to the one at issue here. 673 P.2d 1372, 1374–75 (Or. Ct. App. 1983).

[5] *Oregon Railway & Navigation Co. v. Oregon Real Estate Co.* and *Capelli v. Justice* discussed whether the deeds conveyed easements. 10 Or. 444, 445–46 (1882); 496 P.2d 209, 213 & n.2 (Or. 1972). *Ward v. South Pacific Co.* and sections of Oregon legislation addressing criminalizing walking on a railroad right-of-way were relevant to *trespassing*, not *easements*. 36 P. 166, 168 (Or. 1894); Or. Rev. Stat § 164.255 (2003). *Marvin M. Brandt Revocable Tr. v. United States* does not support that an easement to a railroad must automatically be for railroad purposes. 572 U.S. 93, 104–05 (2014). *Clark v. Kuhn* found the deed language specified that the easement was "for right-of-way purposes" and thus supports our conclusion. 15 P.3d 37, 41 (Or. Ct. App. 2000).

of-way" not limited to a particular use. *See, e.g.*, *Long*, 641 P.2d at 1138–39 (finding easement was "for a right of way" not limited to agricultural use).

Lastly, Stimson cites several cases that are readily distinguishable. *See* Appellant's Br. 34–39. For example, in *Preseault v. Interstate Commerce Commission*, the Supreme Court explicitly declined to "decide whether a taking occurred." 494 U.S. 1, 17 (1990) ("*Preseault I*"). In *Toews v. United States*, this court applied California law to analyze an easement that expressly specified railroad uses as its purpose in the deed. 376 F.3d 1371, 1373, 1376 (Fed. Cir. 2004). And although the deeds in *Preseault II* did not state a purpose, this court, applying Vermont law, found that the instruments "incorporate[d] the purposes specified in the [Vermont] incorporation Act." 100 F.3d at 1534–37, 1541. By contrast, as Stimson conceded, Stimson's deed does not incorporate by reference the Railroad's charter or Articles of Incorporation. *See* Oral Arg. at 2:00–09, https://oralarguments.cafc.uscourts.gov/default.aspx?fl= 22-1201_12062022.mp3. Accordingly, Stimson's cited cases do not dictate a different outcome.

Therefore, we affirm the Claims Court's grant of the government's partial summary judgment motion and denial of Stimson's partial summary judgment motion. *Decision I*, at 282–83, 295.

### B.   Non-Abandonment of Easement

Stimson argues in the alternative that a taking has nonetheless occurred because the Railroad has abandoned the purported easement prior to the NITU. *See* Appellant's Br. 40–41. The government contends that Stimson failed to show clear intent by the Railroad to abandon the easement or conduct consistent with that intent. *See* Appellee's Br. 26–29. We again agree with the government.

Under Oregon law, an easement can be terminated by abandonment. *Cotsifas v. Conrad*, 905 P.2d 851, 852 (Or.

Ct. App. 1995) (citations omitted). "A party claiming abandonment must show in addition to non-use 'either [a] verbal expression of an intent to abandon or conduct inconsistent with an intention to make further use.'" *Conner v. Lucas*, 920 P.2d 171, 174 (Or. Ct. App. 1996) (quoting *Abbott v. Thompson*, 641 P.2d 652, 654 (Or. Ct. App. 1982)) (alteration in original); *see Wiser v. Elliott*, 209 P.3d 337, 341 (Or. Ct. App. 2009). The party alleging abandonment must demonstrate abandonment by "clear and convincing evidence." *Johnston v. Cornelius*, 218 P.3d 129, 135–36 (Or. Ct. App. 2009) (citation omitted). Courts "rarely find" intent to abandon, and "when they do it is because the acts manifesting the intent have so fundamentally changed the landscape that further use of the easement is deemed impossible." *Shields v. Villareal*, 33 P.3d 1032, 1035 (Or. Ct. App. 2001) (citations omitted).

We agree with the Claims Court that Stimson has not met its burden to show by clear and convincing evidence that the Railroad abandoned the easement. *Decision II* at 148–51. Stimson raises numerous instances of potential abandonment of the easement, including but not limited to the POTB's filing of its notice of intent to abandon the rail line with the STB in 2016, the POTB's 2009 decision not to pursue repairs to the tracks damaged in the 2007 storm, the 2014 disbandment of the OTRA organization, and references to the "former railroad line" in the STIA agreement. *See* Appellant's Br. 42–44, 47 (citing J.A. 329–31, 347–53, 354–55, 356–65). But all these examples are directed to potential abandonment *for railroad use only*. Because the easement is broad enough to encompass both railroad use and non-railway use, an intent to discontinue railroad use alone does not constitute "either [a] verbal expression of an intent to abandon or conduct inconsistent with an intention to make further use" for trail use. *Wiser*, 209 P.3d at 341–42 (finding intent to switch from using railway for "operating purposes" to "non-operating"

purposes did not show "an intent to not use the properties at all"). The "cessation of rail operations" alone did not "terminate [the Railroad's] right under the easement" when the easement is not limited to railroad use. *Romanoff Equities, Inc. v. United States*, 815 F.3d 809, 815 (Fed. Cir. 2016).[6]

As Stimson conceded at the oral argument, "there is no direct evidence that [POTB] intended to abandon [the easement] for trail use." Oral Arg. at 11:33–12:02. Although Stimson contends that the POTB has never used the land for trail use, *id.* at 11:49–54, non-use alone is not enough to show abandonment. *Conner*, 920 P.2d at 174–75. Therefore, Stimson has not met its burden to establish abandonment of the easement by POTB by clear and convincing evidence.

Stimson's conclusory statement that the Claims Court's outcome is inconsistent with "overwhelming authority from the Oregon Courts as stated in *Bernards*, *Abbott*, *Conner*, [and *Powers v.*] *Coos Bay*" is also not persuasive.[7] Appellant's Br. 46. *Abbott* found no abandonment because the parties did not submit any evidence of "intent to abandon or conduct inconsistent with an intention to make further use." 641 P.2d at 654. *Conner*, which

---

[6]    Although *Romanoff* applied New York law, the court found that the easement at issue was not restricted to railroad purposes, just as we do here. 815 F.3d at 812–15. Based on that finding, this court then found no abandonment because Romanoff only offered evidence of abandonment of railroad use. *Id.* at 815–16.

[7]    Stimson also asserts that *Wiser* is inconsistent with the Claims Court's conclusion on abandonment. Appellant's Br. 46. As we discussed earlier in this opinion, *Wiser* supports the Claims Court's finding. *See* 209 P.3d at 341–42.

undeniably found that the grantee had ceased using the property, nevertheless found no abandonment because the evidence did not show an intent to abandon the easement. 920 P.2d at 174–75. And *Bernards* and *Powers v. Coos Bay Lumber Co.*, 263 P.2d 913 (Or. 1953), support our conclusion that evidence of intent to abandon one use is insufficient to show abandonment for all uses of an easement. *See Bernards*, 248 P.2d at 345–56 (finding no abandonment and explaining that "[t]he intention required in the abandonment of an easement is the intention not to make in the future *the uses authorized by it*") (emphasis added); *Coos Bay*, 263 P.2d at 943–44 (finding evidence of railroad abandonment sufficient for easements that only included a railroad right of way, but insufficient for easements that broadly covered "roads").

Having found Stimson failed to meet its burden, we affirm the Claims Court's denial of Stimson's partial summary judgment on abandonment and grant of the government's cross motion for partial summary judgment. *Decision II* at 145, 150–51.

## IV. CONCLUSION

We have considered Stimson's remaining arguments and find them unpersuasive. We conclude that the easement granted to the Railroad was broad enough to encompass interim trail use or railbanking. We also conclude that the Railroad did not abandon the easement in question and that no taking occurred. Therefore, we affirm the Claims Court's denials of Stimson's motions for partial summary judgment and grants of the government's cross-motions for partial summary judgment. *Decision I* at 283, 295; *Decision II* at 145, 150–51.

**AFFIRMED**