Argued and submitted October 12, affirmed December 27, 2000

Laurie THORSON,
*Respondent,*

*v.*

STATE OF OREGON,
acting by and through the
DEPARTMENT OF JUSTICE,
*Appellant.*

(97-4972-L-2; CA A106804)

15 P3d 1005

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for appellant. With her on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Lee S. Werdell argued the cause for respondent. With him on the brief was Werdell & Hanson.

Before Deits, Chief Judge, and Landau* and Brewer, Judges.

BREWER, J.

---

* Landau, J., *vice* Warren, S. J.

## BREWER, J.

In this action for wrongful discharge, defendant, the state of Oregon, appeals from a judgment for plaintiff after a nonjury trial. Defendant assigns error to the trial court's denial of its motion to dismiss, ORCP 54 B(2), at the close of plaintiff's case and to the court's finding that plaintiff was discharged for refusing to file a false report against another employee. We review for sufficiency of the evidence, ORCP 54 B(2); *Illingworth v. Bushong*, 297 Or 675, 694, 688 P2d 379 (1984), and affirm.

Because plaintiff prevailed at trial, we state the facts in the light most favorable to her. *Sutherlin School Dist. #130 v. Herrera*, 120 Or App 86, 91, 851 P2d 1171 (1993). Plaintiff was hired by the Oregon Department of Justice - Support Enforcement Division (SED) in June 1997 as an "Office Specialist I." Her employment was subject to a six-month trial service period. For the first month, plaintiff was considered to be an exemplary employee, and she performed her tasks up to twice as fast as other employees in the same job. Plaintiff also had a good working relationship with her immediate supervisor, Diane Vicklund, for that first month.

In July 1997, Mike Brown, a fellow SED employee, allegedly touched plaintiff's arm with his hand and informed her that she was violating Vicklund's unwritten dress code prohibiting employees from wearing sleeveless tops. Concerned that this might be the case, plaintiff went to Vicklund and asked her if such a dress code existed. Vicklund told plaintiff "[w]hat Mike Brown did to you, he sexually harassed you, and you're a victim of sexual harassment." Vicklund also stated that she would have to report the incident to Merry Larsen, the manager of SED's Medford office and Vicklund's immediate supervisor. Upset that Vicklund was characterizing the incident as sexual harassment and that Vicklund was going to report it to Larsen, plaintiff telephoned Vicklund at home that evening. During the telephone conversation, Vicklund instructed plaintiff that she must "cooperate" or she would be fired.

The next day, Larsen met with Vicklund and plaintiff. At that meeting, plaintiff again was asked to give her

account of the Brown incident. Plaintiff testified that after she recounted the incident, "[Larsen] started repeating the exact same things that [Vicklund] did about, '[w]e know you're a victim of sexual harassment.'" Plaintiff responded that "[Brown] did not sexually harass [her]." Plaintiff then testified that "[Larsen] just asked me if I was going to cooperate with her, and I said no." Plaintiff recalled being told that Larsen had a sexual harassment complaint form available for plaintiff to complete.[1] Plaintiff refused to file a complaint or complete a form.

Shortly after this exchange Vicklund began treating plaintiff differently. She wrote up plaintiff for unexcused absences. Based partially upon reports from Vicklund, Larsen met with plaintiff and informed her that she was "overly talkative" and that this was affecting not only her productivity, but also the productivity of those around her. In addition, Larsen began to document other purported deficiencies in plaintiff's job performance, all of which were brought to Larsen's attention by Vicklund. In late August, Larsen instructed other personnel in the office to cease training plaintiff because her employment was going to be terminated. Vicklund also sent a personal note to plaintiff asking for forgiveness and explaining that there were some things that she could not share with plaintiff because of her management position. The note also expressed hope that God would mend the differences between Vicklund and plaintiff. Larsen was prepared to terminate plaintiff's employment until Lee Miller, Personnel Manager for the Oregon Department of Justice, instructed her that plaintiff should not be discharged. Miller told Larsen that plaintiff should be re-evaluated because it appeared that the decision to terminate her may have been tainted by what he described as Vicklund's inappropriate response to the Brown incident, including her personal note to plaintiff.

Larsen then reassigned plaintiff to the supervision of Kay Westland. Two months later, Westland recommended to Larsen that plaintiff's employment be terminated for many of the same reasons previously identified by Vicklund

---

[1] As discussed below, the parties disagree as to whether Larsen actually mentioned the availability of a form to plaintiff.

and Larsen. In late October, Larsen terminated plaintiff's employment. Plaintiff received her official letter of termination and final paycheck in November 1997.

Plaintiff filed this action for wrongful discharge in December 1997.[2] The case was tried to the court in April 1999. In a written opinion that included extensive findings of fact, the court determined that plaintiff's termination in November was merely the culmination of a wrongful termination effort begun two months earlier. It found that "Vicklund threatened to cause [plaintiff's] employment to be terminated if [plaintiff] did not file a report [that plaintiff] thought to be false." The court also stated that the personal note from Vicklund to plaintiff was consistent with Vicklund previously having made an "illegal demand" that plaintiff make a sexual harassment accusation against Brown. Although Vicklund did not have the authority to terminate plaintiff, the court found that Larsen, who did have such authority, "followed the recommendation of [Vicklund] without further inquiry."

The court also found that Larsen's investigation of the incident between plaintiff and Brown was appropriate "even though [plaintiff] did not feel harassed." Furthermore, the court found that plaintiff's recollection that Larsen indicated that a sexual harassment complaint form was readily available "was a reasonable and perhaps natural *misperception* under the stress of the moment." (Emphasis added.) However, the court concluded that "it was clear that people really were out to get [plaintiff]."

Ultimately, the trial court found that

> "[p]laintiff has presented substantial credible evidence that the decision to terminate her employment in August, 1997 was because she refused to file a false report as ordered by her supervisor [Vicklund]. I find that the decision to terminate [plaintiff's] employment was due to [Vicklund's] threat and [plaintiff's] refusal to file what she considered to be a false report. This threat and refusal constituted the primary basis for [Vicklund's] recommendation to [Larsen] that [plaintiff's] employment be terminated."

---

[2] Plaintiff's additional claims are not relevant to this appeal, and therefore, we do not discuss them.

Based on its findings, the court concluded that defendant had wrongfully discharged plaintiff and awarded her a judgment for damages in the amount of $100,000.

On appeal, defendant makes two assignments of error. First, it asserts that the evidence at trial did not support the trial court's conclusion that plaintiff was wrongfully discharged and that the court's findings are internally inconsistent. In a separate, but related, assignment of error, defendant contends that the trial court erred in denying its motion for dismissal, because the evidence was insufficient to establish a *prima facie* case of wrongful discharge. We consider defendant's arguments in reverse order.

■ ■ Defendant's second assignment of error challenges the trial court's denial of its motion for dismissal at the close of plaintiff's case. In reviewing the trial court's ruling, we consider all of the evidence, including what defendant subsequently presented, to determine whether it is sufficient to make a *prima facie* case. *Ranger Ins. Co. v. Globe Seed & Feed Co., Inc.*, 125 Or App 321, 327, 865 P2d 451 (1993), *rev den* 318 Or 458, 871 P2d 122 (1994); *Scholes v. Sipco Services & Marine, Inc.*, 103 Or App 503, 506, 798 P2d 694 (1990).

■ "The elements of a wrongful discharge claim are simple: there must be a discharge, and that discharge must be 'wrongful.' " *Moustachetti v. State of Oregon*, 319 Or 319, 325, 877 P2d 66 (1994). The parties agree that plaintiff was an at-will employee at the time of her discharge. "The general rule regarding employment at will is that an employer may discharge an employee at any time for any reason." *Borough v. D.G. Averill Trucking*, 151 Or App 723, 725, 951 P2d 202 (1997). However, an at-will employee may not be terminated for "fulfilling an important societal obligation." *Id.*; *see also Delaney v. Taco Time Int'l.*, 297 Or 10, 16-17, 681 P2d 114 (1984). Refusing to make a false allegation against a fellow employee fulfills an important societal obligation. *See id.* at 16 (at-will employee could not be discharged lawfully for refusing to sign a false statement). If plaintiff was terminated for fulfilling such an obligation, as she asserts, her discharge was wrongful. Defendant, on the other hand, asserts that the evidence showed that plaintiff was terminated for

poor job performance and for insubordination with regard to the Brown incident.

Viewing the evidence and all reasonable inferences that may be drawn from it in the light most favorable to plaintiff, *Frazier v. Consolidated Equipment Sales,* 64 Or App 833, 835, 670 P2d 153, *rev den* 296 Or 239, 675 P2d 490 (1983), there was sufficient evidence to support the trial court's finding that plaintiff was discharged because of her refusal to make a false sexual harassment report against Brown. Plaintiff gave the following account of a conversation with her direct supervisor, Vicklund:

> "[Vicklund] said '[Plaintiff], we've been trying to fire Mike Brown, and you need to cooperate with me and [Larsen] in terminating him.' And I said, 'I'm not gonna lie for you, Diane.' And so she just said, 'I'm going to Merry, and you need to cooperate, [Plaintiff,] or you'll be fired, and I don't want you talking to Mike about this.' "

Defendant asserts that the supervisors could require plaintiff to cooperate with their investigation, irrespective of her personal opposition, because they, and not she, were entitled to determine whether Brown had sexually harassed plaintiff. That assertion misses the point, because the evidence did not compel a single, indisputable inference about the nature of the supervisors' demands for cooperation.

It is possible to infer, as defendant contends, that plaintiff merely was expected to cooperate by repeating her story as often as might be necessary or convenient to facilitate disciplinary action against Brown. However, another inference also is permissible. Plaintiff gave her account of the Brown incident to both supervisors and there is no evidence that she ever declined to repeat it. Because plaintiff had never refused to cooperate by refusing to repeat her story, it is reasonable to infer that the supervisors meant to require more from plaintiff when they continually demanded cooperation from her. Plaintiff *did* repeatedly refuse to condone her supervisors' characterization of Brown's conduct as sexual harassment. Because that is all that plaintiff ever expressly refused to do, it is reasonable to infer that the supervisors' demand for cooperation was directed toward that refusal.

Viewed accordingly, the supervisors' demand required plaintiff to endorse a characterization of the incident that was contrary to her own perception and belief and, thus, to make a false report. Because that inference also was permissible, the trial court did not err in denying defendant's motion for dismissal.

■ We turn to defendant's first assignment of error, which challenges the court's findings and its conclusion that plaintiff was wrongfully discharged. "[A]n appellate court cannot reject the findings of fact of the trial court unless the appellate court can say affirmatively that there is no evidence to support the fact found by the trial court." *Illingworth*, 297 Or at 694. Defendant's primary argument—that the evidence did not support the trial court's conclusion that plaintiff was wrongfully discharged—reduces to a restated quarrel with the finding that plaintiff was directed to make a false report. Because it does not contend that the court's conclusion was erroneous *if* there was sufficient evidence to support that finding, defendant's argument is answered by our rejection of its challenge to the denial of its motion for dismissal.

Defendant also contends that the finding that plaintiff mistakenly understood that she was being asked to sign a sexual harassment claim form contradicts with the finding that plaintiff was directed to make a false report. We disagree. The only disputed facts that the trial court was *required* to find to support its ultimate conclusion in this case were that plaintiff was directed by her supervisors to falsely characterize the Brown incident as "sexual harassment" and that she was discharged for refusing to do so. The essential finding that plaintiff was required to falsely characterize what occurred as sexual harassment was not inconsistent with the secondary finding that there was no form available at hand for plaintiff to fill out.

Defendant finally asserts that the court's ultimate conclusion—that plaintiff was wrongfully discharged—is inconsistent with the court's finding that Larsen "appropriately investigated and pursued the issue of [Brown's] conduct and the potential that his actions might constitute sexual harassment, even though [plaintiff] did not feel harassed."

Again, we disagree. As the trial court noted, it is appropriate for a supervisor to investigate incidents that may constitute sexual harassment. In fact, it was Larsen's job to do just that. However, that does not mean that the tactics by which plaintiff's supervisors lawfully could conduct such an investigation were unbridled. It was improper for the supervisors to request that plaintiff falsely characterize the Brown incident as sexual harassment and then, when she refused, to discharge her for not "cooperating" with the investigation.

In conclusion, the trial court did not err in denying defendant's motion for dismissal, and its findings and conclusions were supported by evidence in the record and also were internally consistent.

Affirmed.