**LARISA'S HOME CARE, LLC,**
an Oregon limited liability company,
*Plaintiff-Respondent,*

*v.*

**Karen NICHOLS-SHIELDS,**
the duly appointed Personal Representative of
the Estate of Isabell Prichard, Deceased,
*Defendant-Appellant.*

Washington County Circuit Court
C124865CV; A154950

372 P3d 595

Hafez Daraee argued the cause and filed the briefs for appellant.

Ross A. Day argued the cause for respondent. With him on the brief were Matthew Swihart and Day Law Group, PC.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

HADLOCK, C. J.

**HADLOCK, C. J.**

This appeal arises out of an equitable action for unjust enrichment between a residential adult foster care facility and the personal representative of the estate of a former resident, Isabell Prichard. Plaintiff, Larisa's Home Care, LLC, claims that it is owed money for services it provided to Prichard because, it asserts, it should be compensated for the difference between the Medicaid-based rate it charged Prichard and a higher "private pay" rate that it contends Prichard would have paid, absent fraud. Defendant[1] appeals a general judgment and money award of $48,477 for plaintiff, raising two assignments of error. In her second assignment of error, defendant contends that the trial court erred when it concluded that the estate had been unjustly enriched. We agree with defendant and, therefore, must reverse the trial court's judgment. In light of that disposition, we need not reach defendant's first assignment of error, which we do not address further in this opinion.

As an initial matter, we note that defendant's assignments of error are not proper in that they do not identify the trial court's *rulings* that defendant challenges; rather, they purport to assign error to the court's ultimate conclusions on the merits of the case. *See* ORAP 5.45(3) ("Each assignment of error shall identify precisely the legal, procedural, factual, or other ruling that is being challenged."). However, based on the substance of the parties' arguments, we understand the second assignment of error to challenge the trial court's de facto denial of a motion to dismiss that defendant made during closing argument—here, the functional equivalent of a motion to dismiss under ORCP 54 B(2), which provides for dismissal "on the ground that upon the facts and the law the plaintiff has shown no right to relief." *Falk v. Amsberry*, 290 Or 839, 845, 626 P2d 362 (1981) ("[A] motion under ORCP 54 B(2), or a timely *equivalent assertion*, to the trial court is essential to preserve the issue of sufficiency of evidence * * *." (Emphasis added.). We conclude that the motion to dismiss adequately preserved the argument that defendant presents in her second assignment of error. *See*

---

[1] Karen Nichols-Shields, one of Prichard's three adult children, is named as the defendant in her capacity as the personal representative of Prichard's estate.

*also State v. Gonzalez-Valenzuela*, 358 Or 451, 454 n 1, 365 P3d 116 (2015) (noting that the defendant had challenged the legal sufficiency of the state's evidence during her closing argument to the trial court rather than expressly moving for judgment of acquittal, and agreeing with the Court of Appeals that, under the circumstances, the argument was the equivalent of such a motion and that the issue was therefore preserved for appeal).

On appeal from the denial of an ORCP 54 B(2) motion, we review "the entire record to determine whether sufficient evidence was presented to establish a *prima facie* case on the applicable claim, '[v]iewing the evidence and all reasonable inferences that may be drawn from it in the light most favorable to plaintiff.'" *Fowler v. Cooley*, 239 Or App 338, 344, 245 P3d 155 (2010) (quoting *Thorson v. Dept. of Justice*, 171 Or App 704, 710, 15 P3d 1005 (2000) (brackets in *Fowler*)). We state the facts consistently with that standard.[2]

Plaintiff is a residential adult foster care facility that is licensed by the State of Oregon. Plaintiff's owner contracted with the Seniors and People with Disabilities program of the Oregon Department of Human Services (SPD) to provide adult foster home services for SPD clients, *i.e.*, Medicaid eligible residents. Plaintiff also accepted private-pay residents, and the rate that plaintiff charged each resident depended on whether the resident was Medicaid eligible or private-pay. In accordance with the state contract, plaintiff charged Medicaid residents an amount that was set by the state; that amount was lower than the private-pay rate that plaintiff otherwise charged.

Prichard, now deceased, was a resident in plaintiff's Hillsboro facility from June 2007 until she died in November 2008. Both before moving into plaintiff's facility, and while living there, Prichard experienced cognitive difficulties; at some point she was diagnosed with dementia. In

---

[2] Defendant requests that we instead engage in *de novo* review, acting as the ultimate finder of fact, because the case involves the equitable principle of unjust enrichment. *See* ORS 19.415(3) (giving this court discretion to conduct *de novo* review on appeal "in an equitable action or proceeding"). However, because we do not view this case as exceptional, we decline to do so. *See* ORAP 5.40(8)(c) (we exercise discretion to review *de novo* "only in exceptional cases").

2004, Prichard had granted her son, Gardner, power to act as her attorney-in-fact. Gardner had access to and control of Prichard's finances, applied for Medicaid and obtained coverage on her behalf, and made the decision to move Prichard into plaintiff's facility. Plaintiff accepted Prichard as a Medicaid resident and was paid the Medicaid rate for the entirety of Prichard's residency. Gardner was plaintiff's main contact regarding Prichard's care and payment for her care.

After Prichard's death in 2008, it was discovered that Gardner had made a fraudulent statement on the Medicaid application that he had filed on her behalf. Gardner had denied on that application that any of Prichard's property had been transferred within the last 60 months, when, in fact, he had made some such property transfers himself.[3] Gardner did not believe that Prichard was actually eligible for Medicaid, but he filled out the application and obtained Medicaid coverage for her anyway.

Gardner had also taken money from Prichard for his own benefit. By the time Gardner filed the Medicaid application, he had spent all of Prichard's money. Based on his conduct, Gardner was charged criminally; he ultimately pleaded guilty to three counts of first-degree criminal mistreatment. *See* ORS 163.205. Gardner's probationary sentence included a large compensatory fine to be paid to Prichard's estate in care of its personal representative, jail time, and relinquishment of any claim to Prichard's estate except for nonmonetary items that he had already received.

After learning of Gardner's conduct, plaintiff submitted a claim to Prichard's estate in the corresponding probate case. After the personal representative denied that claim, plaintiff filed this action against the personal representative of the estate, seeking to recover what it considered to be the shortfall in what it had been paid for Prichard's care.[4]

---

[3] Asset transfers can trigger a disqualification period for Medicaid eligibility. *See* OAR 461-140-0210 - 461-140-0300.

[4] We note that the estate itself is not a party to the action; however, it is the entity holding the assets that plaintiff seeks to recover. A lawsuit cannot be filed against a deceased person, nor directly against an estate. Naming the personal representative as the defendant, as plaintiff did here, is the proper way to file suit against a deceased person. ORS 115.305 ("All causes of action or suit, by

Plaintiff claimed that Prichard had "unlawfully" obtained Medicaid coverage and that, in accepting Prichard at the Medicaid rate, plaintiff relied on that improper Medicaid qualification and on related statements by Prichard's representatives. Thus, plaintiff claimed that it was paid less than it should have been as a result of accepting the Medicaid rate, and correspondingly, that the assets in the estate were greater than they would have been but for the fraud—all of which resulted in an unjust enrichment of the estate.

The case was tried to the court, which ultimately agreed with plaintiff that the estate had been unjustly enriched. Accordingly, the court entered a judgment awarding plaintiff $48,477 to be paid by Prichard's estate.

On appeal, we understand defendant to assert that plaintiff did not offer evidence sufficient to establish a *prima facie* claim for unjust enrichment and, therefore, the claim must fail as a matter of law. Plaintiff responds that evidence in the record adequately supports each element of the claim.

"The elements of the quasi-contractual claim of unjust enrichment are (1) a benefit conferred, (2) awareness by the recipient that she has received the benefit, and (3) it would be unjust to allow the recipient to retain the benefit without requiring her to pay for it." *Cron v. Zimmer*, 255 Or App 114, 130, 296 P3d 567 (2013). "The first two elements are questions of historical fact, which we review for legally sufficient evidence to support them. The third element presents a question of law, which we review for legal error." *Wilson v. Gutierrez*, 261 Or App 410, 414, 323 P3d 974 (2014).

Defendant focuses her argument on the third element of the unjust enrichment claim, contending that it has not been established, as a matter of law, because plaintiff was paid the full Medicaid-authorized amount for the services it provided to Prichard. That is, defendant argues,

one person against another, survive to the personal representative of the former and against the personal representative of the latter."); *Ramirez v. Lembcke*, 191 Or App 70, 76, 80 P3d 510 (2003) ("[A]n action cannot be maintained against a deceased person. The proper defendant is the personal representative of the decedent's estate or the decedent's successor in interest.").

the court erred when it concluded that the estate had been unjustly enriched because it did not pay the private-pay rate for services during Prichard's residency at plaintiff's facility. In response, plaintiff argues that all of the elements of unjust enrichment were met. With respect to the third element, plaintiff contends that it would be unjust to allow defendant and the estate's beneficiaries to retain the benefit of Prichard having paid the lesser Medicaid rate because that result would, essentially, encourage Medicaid fraud by others. As explained below, we agree with defendant that the record does not establish that any enrichment to the estate was "unjust"; accordingly, we do not address whether the record includes evidence sufficient to support the other elements of plaintiff's claim.

In light of the parties' contentions regarding the third element of the unjust enrichment claim, the question before us is whether, viewed in the light most favorable to plaintiff, the facts and inferences in the record establish as a matter of law that it would be unjust for the estate to retain the benefit obtained as a result of Prichard's allegedly improper Medicaid qualification. That is, we must consider whether, under the circumstances, it would be unjust for the estate not to pay plaintiff the difference between the Medicaid rate and the private-pay rate.

We evaluate that question based on three considerations. An "injustice" exists, for purposes of an unjust enrichment claim, only if at least one of the following circumstances is present: "(1) the plaintiff had a reasonable expectation of payment; (2) the defendant should reasonably have expected to pay; or (3) society's reasonable expectations of security of person and property would be defeated by non-payment." *Jaqua v. Nike, Inc.*, 125 Or App 294, 298, 865 P2d 442 (1993) (internal quotation marks omitted). "Those are questions of law that depend on underlying factual determinations." *Wilson*, 261 Or App at 415. We address those points in order.

First, we consider whether the evidence presented at trial is sufficient to support a determination that plaintiff had a reasonable expectation of payment at the private-pay rate. Defendant contends that plaintiff was paid in full

because it was paid the full amount of the Medicaid rate. Stated another way, in defendant's view, plaintiff had no expectation of being paid the private-pay rate because it accepted Prichard as a Medicaid client and was under contract with the state to be paid the contracted rate.

At trial, Louka, the owner of plaintiff's facility, testified that Prichard was a Medicaid client and that plaintiff was paid in full the Medicaid-set dollar amount for Prichard's care. Louka also testified that she had to enter into a contract with the State of Oregon to become a Medicaid service provider for adult foster care. The yearly contracts for the relevant time period include a payment provision that states:

> "Payment authorized by SPD on Form 512 will establish the rate for service for each client. The room and board payment is the responsibility of the client and is not covered by this Contract. Nevertheless, the amount of payment that a CONTRACTOR may charge SPD clients for room and board costs will be established by SPD annually. CONTRACTOR agrees to accept the rate authorized by SPD plus the established room and board payment as payment in full, and will not charge the client any additional amounts for these services."

In addition, Louka testified that plaintiff would have charged Prichard the private-pay rate had she lived at plaintiff's facility and not been a Medicaid client.

Given the undisputed evidence regarding plaintiff's contract with the state, plaintiff could establish that it had a reasonable expectation of being paid the private-pay rate only if it presented evidence from which a factfinder, here the trial court, could find that Prichard was not a Medicaid client. The uncontroverted evidence at trial showed that the state, not a private party, makes the determination about who is eligible for Medicaid. The record includes evidence suggesting that Prichard was approved for Medicaid coverage, and no evidence suggests that the state later determined that Prichard was not Medicaid eligible. In the absence of such evidence, plaintiff was bound by the contract with the state to accept the Medicaid rate as payment in full and not to charge Prichard any additional amounts. It follows, as a matter of law, that plaintiff *reasonably* could expect to

be paid according to the agreed-to contract terms—that is, plaintiff's reasonable expectation would be to be paid the Medicaid rate to provide services for Prichard, whom the state had determined to be Medicaid eligible, and nothing more.

Plaintiff does not rely on the second principle that can support a determination of unjustness, that is, that "the defendant should reasonably have expected to pay." *Jaqua*, 125 Or App at 298. Moreover, we find no evidence in the record that would permit a conclusion that Prichard should have reasonably expected to pay the private-pay rate.

Accordingly, we turn to the third circumstance that can establish "unjustness": when "society's reasonable expectations of security of person and property would be defeated by non-payment." *Id.* On appeal, neither party directs us to any evidence in the record purporting to reflect society's expectations. Instead, plaintiff argues as a legal matter that, if defendant is not required to pay plaintiff, a slippery slope will be created that gives other beneficiaries incentive to commit Medicaid fraud and make misrepresentations to service providers because there would be no consequence for doing so. Defendant counters by arguing that the Oregon Department of Human Services acts as both a gatekeeper for determining Medicaid eligibility and as a watchdog over Medicaid funds. In other words, defendant contends, the system incorporates safeguards that will adequately deter Medicaid fraud.

We agree with defendant that—as a matter of law—plaintiff has not established that societal expectations will be defeated if the estate is not required to pay plaintiff the difference between the Medicaid and private-pay rates under the circumstances presented in this case. As outlined above, the contract that plaintiff entered into with the state requires plaintiff to charge only the Medicaid rate for all clients whom the state has determined are Medicaid eligible. That contract reflects various provisions of Oregon law, including those that prohibit providers from seeking or accepting any payments above the Medicaid rates. For example, ORS 443.739, which describes a "Residents' Bill of Rights" for residents of adult foster homes, includes a right

to "[b]e free from financial exploitation." In association with that right, the statute states that providers "may not solicit, accept or receive money or property from a resident other than the amount agreed to for services." ORS 443.739(16); *see also* OAR 411-050-0615(1)(d) ("The rate of compensation established by the Department is considered payment in full. The licensee may not request or accept additional funds or in-kind payment from any source.").[5] Those provisions reflect societal expectations that facilities like plaintiff's will not exploit their residents by trying to extract payments above the Medicaid rates when those residents have been deemed Medicaid eligible. *Cf. Edward D. Jones & Co. v. Mishler*, 161 Or App 544, 569, 983 P2d 1086 (1999) (looking to policies underlying relevant statutes in determining whether a party's retention of certain benefits would be unjust). Thus, awarding a provider the difference between the Medicaid rate and the private-pay rate in a case where the resident has been deemed Medicaid eligible would defeat societal expectations, not further them.[6]

We also reject plaintiff's contention that the specific facts of this case—particularly Gardner's fraudulent completion of Prichard's Medicaid application, which did not reflect pertinent property transfers—establish that defendant was unjustly enriched. Plaintiff is essentially blaming the estate for the bad acts that Gardner committed, and asking that the estate be punished as a consequence. However, the record includes no evidence that would support a finding that Prichard herself was involved in any fraud.[7]

---

[5] The current version of OAR 411-050-0615(1)(d) was adopted in 2013, when the rule was also renumbered. The analogous rule that was in effect during Prichard's residency in plaintiff's facility similarly provided that "The rate of compensation established by the Division is considered payment in full and licensees must not accept additional funds or in-kind payment." *Former* OAR 411-050-0435(1)(d) (Jan 1, 2007).

[6] We observe that the Oregon Department of Human Services maintains a fraud hotline that can be used to report client or provider fraud. *See* http://www.oregon.gov/DHS/ABUSE/Pages/fraud-faq.aspx (accessed April 20, 2016). In addition, DHS may prosecute a civil suit or action against a person who has unlawfully obtained medical assistance or public assistance to recover the amount or value of the assistance obtained, and a person who unlawfully obtains public assistance or medical assistance can have the public assistance modified, cancelled, or suspended. *See* ORS 411.620 - 411.660.

[7] For purposes of this lawsuit, we consider Prichard and her estate to be effectively one and the same. If Prichard were alive, presumably the suit would

Society expects that crime victims, such as Prichard, will be protected—not penalized—for harm done to them.

Further, the parties do not dispute that Gardner committed a crime against Prichard and that he was punished for that crime. In addition to suffering the criminal consequences, Gardner does not stand to financially benefit from Prichard's estate, as he waived all rights to inherit from it; consequently, any benefit to the estate does not inure to him. Thus, the undisputed evidence establishes that the result here will neither reward a wrongdoer nor encourage others to commit fraud and make misrepresentations.

For all the foregoing reasons, we conclude that society's reasonable expectations will not be defeated if defendant does not pay plaintiff the difference between the Medicaid rate for services and the private-pay rate.

Because the record does not contain sufficient evidence to support a conclusion that any of the three indicators of an injustice are present, the third element of the unjust enrichment claim is not satisfied, as a matter of law. The trial court should have granted defendant's motion to dismiss.

Reversed.

---

have been filed against her. *See* 277 Or App at 814 n 4.