HADLOCK, P. J.
*221 This case comes to us on remand from the Supreme Court. Larisa's Home Care, LLC v. Nichols-Shields , 362 Or. 115, 404 P.3d 912 (2017) ( Larisa's II ). Plaintiff is a residential adult foster care provider that brought an unjust enrichment claim to recover the reasonable value of its services from defendant, the personal representative of the estate of a former resident, Prichard, who fraudulently obtained services from plaintiff at a lower Medicaid-based rate. In response, defendant contended, among other things, that Prichard's estate had not been unjustly enriched; she moved to dismiss on that basis. The trial court implicitly denied that motion and, following a bench trial, "ruled in favor of plaintiff, concluding that there was unjust enrichment." Id . at 120, 404 P.3d 912. Defendant appealed. In our initial decision, we held that the trial court had erred by concluding that defendant had been unjustly enriched. We therefore reversed without reaching additional arguments that defendant had made on appeal. Larisa's Home Care, LLC v. Nichols-Shields , 277 Or. App. 811, 812, 820, 372 P.3d 595 (2016) ( Larisa's I ). On review, the Supreme Court concluded that plaintiff had established that the estate had been unjustly enriched. Larisa's II , 362 Or. at 123, 404 P.3d 912. It reversed our decision on that basis and remanded the case to us to consider an additional defense argument that we had not reached-whether certain provisions of Medicaid law nevertheless prohibit plaintiff's recovery. Id . at 123, 142, 404 P.3d 912. For the reasons set out below, we affirm.
We provide background facts as articulated in Larisa's II . Plaintiff contracted with the Department of Human Services (DHS) to provide adult foster home services to patients who qualified for Medicaid. Larisa's II , 362 Or. at 118, 404 P.3d 912. For Medicaid-qualified patients, the rates charged by plaintiff were set by DHS. Id . The Medicaid rates were substantially lower than the rates that plaintiff charged to non-Medicaid patients-the "private pay" patients. Id . at 119, 404 P.3d 912. Prichard, who had been approved to receive Medicaid benefits, resided and received care in one of plaintiff's facilities and was charged the Medicaid rate for services, rather than the higher, private-pay rate. Id . at 118-19, 404 P.3d 912.
*222 After Prichard's death, her family (and others) learned that Prichard's son, Gardner, who had had power of attorney for Prichard, had made a false representation on Prichard's Medicaid application. Id . at 119, 404 P.3d 912. Another of Prichard's children-defendant, who was appointed as the personal representative for the estate-discovered that for years, Gardner had been transferring Prichard's assets to himself or using her *615 funds for his own benefit.[1] Id . at 119-20, 404 P.3d 912. Gardner had represented on his mother's Medicaid application, however, that Prichard had not transferred or given away any cash or other property to anyone in the preceding 60 months. Id . at 119, 404 P.3d 912. "As a result, [DHS] approved Prichard for Medicaid benefits." Id .
Plaintiff made a claim against Prichard's estate, which defendant denied. Id . at 120, 404 P.3d 912. Plaintiff then filed this lawsuit for equitable relief in which it sought payment from the estate of the difference between a higher private-pay rate and the lower Medicaid rate that it had charged Prichard. Id . at 120, 404 P.3d 912. The trial court ruled in plaintiff's favor after concluding that defendant was unjustly enriched and that Medicaid law did not prevent plaintiff's recovery. Id . at 120-21, 404 P.3d 912. It entered a judgment in plaintiff's favor in the amount of $ 48,477. Id . at 121, 404 P.3d 912.
Defendant appealed and presented two arguments, which the Supreme Court characterized broadly as follows: "(1) there was no unjust enrichment; and (2) regardless, Medicaid-related law (statutes, rules, and the terms of plaintiff's contract with the department) prohibited plaintiff from recovering from defendant." Id . at 121, 404 P.3d 912. We held that the record did not support the unjust enrichment claim and that the trial court erred in denying defendant's motion to dismiss. Larisa's I , 277 Or. App. at 820, 372 P.3d 595. As stated above, the Supreme Court reversed our decision regarding the unjust enrichment claim and remanded this case to us for consideration of the Medicaid-related argument that we had not addressed. Larisa's II , 362 Or. at 141-42, 404 P.3d 912.[2]
*223 After the case returned to us, we requested and received an amicus curiae brief from the Oregon Department of Justice, discussing the Medicaid-related issue that the Supreme Court had identified.[3] We gave the parties leave to file supplemental briefs responding to that amicus brief. Plaintiff filed a supplemental brief adopting the amicus brief in its entirety. Defendant did not file a supplemental brief. Accordingly, we describe defendant's Medicaid-related arguments in the terms that she presented them in her opening and reply briefs, filed before we issued our original decision.
In her opening brief, defendant's arguments focus on former OAR 411-050-0435(1)(d) (Jan. 1, 2007), which provided:
"The rate of compensation established by [DHS] is considered payment in full and licensees must not accept additional funds or in-kind payment."[4]
Defendant asserts that the trial court erred when it concluded that that rule did not bar plaintiff's unjust enrichment action. Defendant also points to plaintiff's contract with DHS, which includes provisions that reflect the administrative rule's requirements.[5] Defendant *616 asserts that "the *224 evidence and authority provided to the trial court clearly established that [the rule] was applicable to this case and should have been enforced" and concludes that the court "erred when it concluded that [the] rule did not apply to this case."
In support of her general assertion that the trial court erred, defendant makes three specific arguments that we set out below. At the outset, we emphasize that this opinion addresses-and rejects-only those arguments. Moreover, it is important to recognize that we address the parties' arguments in the particular context in which they are presented in this case-the context of an unjust enrichment action brought against the estate of a decedent who is proved to have fraudulently received services at a Medicaid rate when she was alive, and whose actual ineligibility for Medicaid was determined in the course of that post-death action. We express no opinion regarding how OAR 411-050-0435(1)(d) (Jan. 1, 2007), the current version of that rule, or any other law might apply in a different context.[6]
On appeal, the parties seemingly agree that OAR 411-050-0435(1)(d) (Jan. 1, 2007) barred plaintiff from charging more than the rate established by DHS for Medicaid-eligible residents at its facility. Defendant's arguments that the rule precluded this lawsuit all are premised on a contention that Prichard was eligible for Medicaid while she lived at plaintiff's facility. First, defendant points to the lack of "evidence that DHS had determined that the Medicaid benefits provided to Ms. Prichard were fraudulently obtained." Accordingly, she argues, the trial court could not collaterally attack DHS's original eligibility determination, which plaintiff's claim would require it to do. Second, defendant argues that Gardner is the person who committed *225 the fraud and that his fraud is not attributable to Prichard or her estate; in that regard, we understand defendant to argue that Prichard's Medicaid eligibility should not be invalidated because she did not herself fraudulently obtain Medicaid benefits. And third, defendant argues that, even if Gardner's asset transfers had been disclosed on Prichard's Medicaid application, they would not have been disqualifying transfers, and Prichard would have been deemed to be eligible for Medicaid benefits.
All of defendant's arguments are foreclosed by the Supreme Court's decision in Larisa's II . First, the court expressly rejected defendant's argument that "plaintiff's action is an improper collateral attack on [DHS's] exclusive right under ORS 410.070(1) to make Medicaid eligibility decisions."[7] Larisa's II , 362 Or. at 140, 404 P.3d 912. Defendant relied on ORS 410.070 to support her contention that DHS's original determination that Prichard was Medicaid-eligible was legally binding on plaintiff unless and until DHS itself overturned that decision or plaintiff successfully challenged it in an administrative proceeding brought against DHS. Id . The court stated that
" ORS 410.070 does not contain a provision barring equitable actions by Medicaid service providers. Furthermore, given ORS 411.630, which establishes that it is unlawful for recipients of public assistance to use fraud to obtain benefits, there is no reason *617 to infer from ORS 410.070 that, when a recipient commits fraud against a Medicaid service provider, the provider is barred from recovering from the fraud feasor in equity."
Id . at 140-41, 404 P.3d 912 (footnote omitted). To the extent that defendant's argument under OAR 411-050-0435(1)(d) (Jan. 1, 2007) is premised on a notion that only DHS may determine whether, as a factual matter, a person is Medicaid-eligible-and a court may never do so-that argument fails under Larisa's II .
*226 Second, the Supreme Court held that Gardner's fraud on the Medicaid application was attributable to Prichard: "Because Gardner made a false representation while acting as Prichard's agent and on her behalf, Prichard is liable for the fraud." Id . at 137-38, 404 P.3d 912. That holding defeats defendant's argument that Prichard should still be deemed Medicaid-eligible for purposes of OAR 411-050-0435(1)(d) (Jan. 1, 2007) because Gardner, not Prichard herself, committed the fraud.
And third, the Supreme Court concluded that the undisclosed transfers of assets that had been made by Gardner were the kind of transfers that were disqualifying; they did not fall into an exception to the general rule that applies to victims of fraud. Id. at 136, 404 P.3d 912 ; see OAR 461-140-0220(7) (Jan. 1, 2007) (a transfer is not disqualifying if the "client was a victim of fraud * * * and legal steps have been taken to recover the asset"). Thus, if Gardner's transfers of Prichard's assets had been disclosed on her Medicaid application form, "then Prichard would have been disqualified from receiving Medicaid benefits while she stayed at plaintiff's facility. The false representations on the Medicaid form thus enabled Prichard to pay the discounted Medicaid rates, when she otherwise would have had to pay the higher private-pay rates." Larisa's II , 362 Or. at 136-37, 404 P.3d 912. Defendant's argument that the "transfer of assets is not disqualifying" cannot survive that holding.
In sum, the Supreme Court concluded that Prichard was ineligible for Medicaid benefits at the time she applied due to the disqualifying transfers made prior to the application, Prichard qualified for Medicaid only because of Gardner's fraud that was attributable to her, and plaintiff, as a third party seeking an equitable recovery, is not bound by the Medicaid eligibility determination that was obtained due to fraud. For the reasons set out above, those holdings defeat each of the arguments about OAR 411-050-0435(1)(d) (Jan. 1, 2007) that defendant made in her original briefing to this court.
When the Supreme Court remanded the case to us, it observed that defendant's arguments to that court had "not flesh[ed] out why her reading of the * * * rule is correct in *227 the context of a recipient's fraudulent receipt of the Medicaid rate." Larisa's II , 362 Or. at 142, 404 P.3d 912 (emphasis added). That is, the court suggested that defendant needed to explain why the rule would bar an action in equity even when it was proved that the lower Medicaid rate was obtained fraudulently. Defendant has not done so; indeed, she did not file a brief on remand. Moreover, as explained above, the arguments in her initial briefing all are premised on a contention that Prichard must be deemed not to have obtained the lower rate fraudulently. Consequently, defendant has given us no reason to conclude that OAR 411-050-0435(1)(d) (Jan. 1, 2007) or any other law precluded plaintiff from pursuing or prevailing in this unjust enrichment action.
Affirmed.

Gardner ultimately pleaded guilty to three counts of first-degree criminal mistreatment. Larisa's II , 362 Or. at 120, 404 P.3d 912. His sentence included a requirement to repay Prichard's estate $ 195,710.11, which he did. Id .

The Supreme Court declined to address that argument in the first instance because, among other things, defendant had not "flesh[ed] out" that argument and plaintiff had not addressed it in its briefing in that court. Larisa's II, 362 Or. at 142, 404 P.3d 912.

The Department of Justice (DOJ) noted in its amicus brief that it had determined that neither it nor its client agencies had any direct interest in the issue involved in this case and that it was submitting its brief "solely to assist the court in determining the correct rule of law." DOJ concluded that "no pertinent aspect of federal or state law appears to bar plaintiff's otherwise viable unjust enrichment claim."

The 2007 version of the rule was effective during the time of Prichard's residency in plaintiff's facility. In 2013, the rule was renumbered to OAR 411-050-0615(1)(d) and reworded to state that "[t]he rate of compensation established by the Department is considered payment in full. The licensee may not request or accept additional funds or in-kind payment from any source." In her reply brief, defendant refers to the renumbered rule; however, she does not assert that the reworded text affects the arguments on appeal. Because it does not affect our analysis, and for convenience, we refer to the rule in effect on January 1, 2007, throughout.

In particular, defendant emphasizes the "CONSIDERATION and PAYMENT PROCEDURE" section of the contract, which states that the provider "agrees to accept the rate authorized by [DHS] plus the established room and board payment as payment in full, and will not charge the client any additional amounts for these services." Defendant observes that the contract provision is, itself, based on OAR 411-050-0435(1)(d) (Jan. 1, 2007); she does not argue that the contract provisions have significance beyond what is stated in that rule.

Although defendant includes in her brief a citation to ORS 443.739(16), which is part of the Residents' Bill of Rights and states that each resident in an adult foster home has the right to "[b]e free from financial exploitation" and that the provider "may not solicit, accept or receive money or property from a resident other than the amount agreed to for services," she does not develop any separate argument about the application of that statute or its effect on this lawsuit and we do not do so for her. See Beall Transport Equipment Co. v. Southern Pacific , 186 Or. App. 696, 700 n. 2, 64 P.3d 1193, adh'd to on recons. , 187 Or. App. 472, 68 P.3d 259 (2003) (it is not our "function to make or develop a party's argument when that party has not endeavored to do so itself").

ORS 410.070(1) specifies duties of DHS, including that it shall "[s]erve as the central state agency with primary responsibility for the planning, coordination, development and evaluation of policy, programs and services for elderly persons and persons with disabilities in Oregon," "[f]unction as the designated state unit on aging," and "[r]eceive and disburse all federal and state funds allocated to the department." ORS 410.070(1)(a), (b), (e).