Argued and submitted February 9, reversed and remanded September 9, 2009

Michael G. JOHNSTON
and Dauna L. Johnston,
*Plaintiffs-Appellants,*

*v.*

Steven CORNELIUS
and Debra Cornelius,
husband and wife,
*Defendants-Respondents.*

Deschutes County Circuit Court
05CV0234MA; A137037

218 P3d 129

Michael W. Peterkin argued the cause for appellants. With him on the briefs was Peterkin & Associates.

Gerald A. Martin argued the cause for respondents. With him on the brief was Francisa Hansen & Martin, LLP.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

## ROSENBLUM, J.

Plaintiffs brought this action for interference with easement, alleging that defendants had blocked their access to a driveway easement across defendants' property in Deschutes County. Defendants responded with counterclaims alleging that the easement had been extinguished either by abandonment or by adverse possession. The trial court ruled in defendants' favor on both counterclaims and entered a judgment dismissing plaintiffs' claim. Plaintiffs appeal. On *de novo* review, we conclude that defendants failed to prove by clear and convincing evidence that the easement was extinguished. We also conclude that plaintiffs proved that defendants substantially interfered with their use of the easement. Because questions remain as to whether plaintiffs are entitled to damages, we reverse and remand for further proceedings.

We take the following facts from the record. The parties own parcels of property located within a larger tract of land referred to in the deeds to the parcels as the "Southwest Quarter,"[1] which measures 1,320 feet by 1,320 feet. Swalley Road runs along the western and northern boundaries of the Southwest Quarter; the road bends 90 degrees at the northwest corner of the tract. The Southwest Quarter is divided into nine separate tax lots. The north half of the Southwest Quarter is divided into four parallel lots of equal size. From west to east, those lots are designated as lots 400, 600, 702, and 700. The south half of the Southwest Quarter is similarly divided, except that the easternmost parcel is further divided into two lots, lot 800 and lot 701, along an east-west line, such that lot 800 lies to the north of lot 701. From west to east, the remaining lots are designated as lots 500, 601, and 703. Plaintiffs own lots 800 and 701. Defendants own lot 601. Thus, defendants' property is separated from plaintiffs' two lots by lot 703. Plaintiffs' home lies near the eastern boundary of lot 800. Defendants' home lies near the southern boundary of lot 601. The easement at issue in this case runs directly in front of defendants' home.

---

[1] More specifically, the deeds refer to the larger tract as "the Southwest Quarter of the Northwest Quarter of Section Twenty, Township Sixteen South, Range Twelve East of the Willamette Meridian, Deschutes County, Oregon."

The easement in question was created in a warranty deed given by Rollie and Alma Roach to T. R. and Dorothy Wilson on March 4, 1974. The deed conveyed, as a single tract of land, lots 700, 701, 702, and 703.[2] The deed from the Roaches to the Wilsons also granted the easement at issue in this case: a 30-foot-wide roadway easement across lots 500 and 601, running along the southern boundary of the lots.[3] In other words, the easement ran east from Swalley Road, along the southern boundary of lots 500 and 601, to the tract purchased by the Wilsons. The deed from the Roaches did not specify whether the easement was intended to benefit any particular portion of the property conveyed.

The Wilsons evidently already owned lot 800, so the conveyance from the Roaches effectively made them the

---

[2] The deed did not describe the property conveyed in terms of the tax lot numbers. Rather, it described the property as two separate parcels, each identified by metes and bounds. The first parcel consisted of lots 702 and 703. The second parcel consisted of lots 700 and 701; at the time, lot 800 was configured slightly differently, and lots 700 and 701 had a common boundary and thus could be described as a single parcel. Plaintiffs obtained a lot line adjustment to configure lot 800 as it currently is. That adjustment does not affect the issues before us.

[3] The deed actually describes the grant as two separate easements—one across the southernmost 30 feet of lot 500, and one across the southernmost 30 feet of lot 601. For ease of reference, we refer to them as a single easement.

owners of the entire eastern half of the Southwest Quarter. Around the time that they acquired the property from the Roaches, the Wilsons sold, as a single parcel, lots 700, 800, and 701 to Richard and Diane Graue—in essence, the entire eastern half of their property.[4] The deed to the Graues did not mention the easement that the Roaches granted to the Wilsons across lots 500 and 601. Nor did the deed grant an easement across the property that the Wilsons retained—lots 702 and 703.

The Wilsons built a house near the southwestern corner of their property. They used the driveway on the easement across lots 500 and 601 to access the house from Swalley Road.

In 1978, the Graues sold lots 701 and 800 as a single parcel.[5] In the deed, they granted a roadway easement along the eastern boundary of lot 700, thus providing the buyer with access to Swalley Road to the north. That parcel changed hands several more times until plaintiffs acquired it in 1992. None of the deeds, including the deed to plaintiffs, mentioned the easement across lots 500 and 601. All of the deeds included the easement across lot 700. None of the owners of lots 701 and 800—including plaintiffs—ever used the driveway across lots 500 and 601 to access Swalley Road, although, for about 10 years, plaintiffs walked down it once a year to clear an irrigation ditch along Swalley Road.

In the meantime, in 1985, the Wilsons sold lot 703—the southern half of their property—to Mr. and Mrs. Trink.[6]

---

[4] The deed to the Graues identified the property conveyed as a single rectangular tract, described by metes and bounds.

[5] The deed given by the Graues described the parcel as the "South Half of the East Half of the East Half of the Southwest Quarter * * *."

[6] In a separate agreement, the Wilsons granted the Trinks an easement along the eastern boundary of lot 702, thus providing them with the possibility of accessing Swalley Road to the north (though the Trinks never built a driveway on it). That easement agreement is not in the record, although it is referred to in other documents in evidence. The exact parameters of the easement are not disclosed. A tax map in the record indicates that an easement runs south from Swalley Road all the way to the southeast corner of lot 703—that is, along the eastern boundary of both lots 702 and 703—and, from there, west along the southern boundary of lots 703, 601, and 500, where it again meets Swalley Road. It is unclear whether the easement shown along the eastern and southern boundaries of lot 703 was created as part of the agreement between the Wilsons and the Trinks. Nothing in the record indicates that plaintiffs' predecessors in interest were parties to that agreement or that it was intended to benefit lots 800 or 701.

The Trinks continued to use the existing driveway across lots 500 and 601 for several more years. Eventually, they bought lot 702 from the Wilsons and constructed a driveway along the western boundary of lots 702 and 703, which they then used as their primary access to Swalley Road.

The Trinks also built a fence up the center of lot 703, beginning at the southern boundary. There was no gate in the fence. They used the fenced-in area (on the east side of the fence) as pasture land. The fence was in place when plaintiffs purchased their property in 1992. Plaintiffs did not object to the fence blocking any potential vehicle passage across lot 703 for at least 12 years after they bought their property.

The Trinks later sold lots 702 and 703 to Mr. and Mrs. Curry. The Currys used the easement across lots 500 and 601 on several occasions, but they primarily used the driveway on their own property to access Swalley Road to the north. The Currys also used the fenced-in area for pasture.

Defendants purchased lot 601 in 2001. They were aware of the easement across the property, although a lawyer they consulted told them that the easement was no longer valid. At some point before defendants acquired the property, when either that property or the neighboring property to the south was cleared for agricultural use, large rocks were piled along the southern boundary of lot 601. The rocks extend between 15 and 20 feet onto that lot—that is, onto the easement. At various times, both defendants and their predecessors parked vehicles and trailers on the driveway that lies on the easement.

In 2004, plaintiffs applied to Deschutes County for a conditional use permit to allow them to subdivide their property and build a house on lot 701, which they intended to sell. Because their house on lot 800 lies near the eastern boundary, extending their driveway to provide access to lot 701 would mean that the buyers of lot 701 would pass closely by their house when driving to and from Swalley Road. Plaintiffs did not want traffic passing so close to their house, so they sought to create a driveway from the southern part of lot 701 to Swalley Road to the west. Contending that the easement created in the 1974 deed from the Roaches to the

Wilsons provided access to the entire property conveyed in the deed—including lot 701—they asserted that they had a right to use the easement. Plaintiffs persuaded the Currys to remove a portion of the fence on lot 703 so they could construct a driveway along the southern boundary of that lot to connect lot 701 to the driveway on lots 500 and 601. The Currys refused, however, to sign an agreement expressly creating an easement across lot 703. Plaintiffs listed lot 701 with a realtor, giving an address that indicated that access was from Swalley Road to the west.

Defendants strenuously objected to plaintiffs' assertion that they had a right to use the easement across defendants' property. At some point, they placed an electric fence across the easement. They also continued to park vehicles and trailers in the driveway. Potential buyers who went to the address listed with the realtor for lot 701 would not have been able to reach it from that driveway. One of the parties' neighbors made an offer on lot 701 but later withdrew the offer because of the issues with the easement.

Ultimately, plaintiffs brought this action for interference with easement, seeking damages and an injunction requiring defendants to remove all obstructions and prohibiting further interference. Defendants filed counterclaims alleging that the easement had been extinguished by abandonment or adverse possession.[7]

At trial, the parties stipulated to a number of facts, two of which are pertinent to our analysis:

"7.   When executed, one of the purposes of the disputed easement was to provide [lot 701] with access to Swalley Road on the west by allowing use of the southerly thirty feet of the three properties ([lots] 500, 601 and 703) between [lot 701] and Swalley Road.

"8.   On several occasions, the Currys used portions of the disputed easement across [lot 601] to access [lot 703]."

---

[7] Defendants also filed a counterclaim for damages, alleging that plaintiffs' assertion of an easement had clouded the title to their property and made it unsalable. The trial court ruled in plaintiffs' favor on that counterclaim, and it is not at issue in this appeal.

The parties also presented evidence of the above-stated facts. In addition, plaintiffs presented evidence that, at some point after they applied for the conditional use permit, large rocks from the pile along the southern boundary of lot 601 were moved into the driveway, further impeding passage. Plaintiffs testified that the rocks were removed a week or two before trial. Defendant Steven Cornelius testified that he had not placed the rocks in the driveway to block passage, but had given a landscaper permission to take rocks, and that they had been in the driveway only a short while before the landscaper removed them. The electric fence that defendants had put up had also been removed by the time of trial.

At the close of defendants' case, plaintiffs moved to dismiss defendants' counterclaims, arguing that defendants had not adequately pleaded adverse possession or abandonment and had not presented sufficient evidence to establish those claims. The trial court deferred ruling on the motion, instructing plaintiffs' counsel to make his arguments in support of the motion in his closing argument.

After closing arguments, the court ruled that, with respect to plaintiffs' property, the easement across defendants' property had been extinguished by abandonment and adverse possession. In light of that conclusion, it dismissed plaintiffs' claim for interference with easement and entered a general judgment in defendants' favor. In a supplemental judgment, the court awarded costs to defendants.

In their first assignment of error on appeal, plaintiffs argue that the trial court erred in ruling that the disputed easement had been extinguished by adverse possession. Plaintiffs argue that defendants failed to prove their claim by clear and convincing evidence.[8]

Defendants argue that there is clear and convincing evidence that plaintiffs never used the easement across lot 601, that defendants regularly parked vehicles on the easement, and that rocks covered 15 to 20 feet of the easement.

---

[8] In their first and second assignments of error, plaintiffs also argue that defendants failed to adequately plead their claims for adverse possession and abandonment. Because we agree with plaintiffs that defendants failed to prove their claims by clear and convincing evidence, we do not address those arguments.

They focus primarily, however, on lot 703—the property between lots 601 and 701. Defendants point out that the Currys and their predecessors used the property—including the area along the southern boundary—continuously for pasture and that, for at least 12 years (from 1992 to 2004), the fence that the Trinks built blocked any vehicular passage over the property. Defendants contend that the evidence shows that those uses were open, notorious, exclusive, and continuous; they contend further that we can infer hostility from the fact that the uses were open and notorious.

■ As the parties' arguments imply, to prove extinguishment of an easement by adverse possession, the servient owners must show, by clear and convincing evidence, that their use or occupancy of the easement was actual, open, notorious, exclusive, continuous, and hostile for a 10-year period. *Slak v. Porter*, 128 Or App 274, 277-78, 875 P2d 515 (1994). In addition, the servient owners must show that their use or occupancy was inconsistent with the dominant estate owner's use of the easement. *Id.* at 278.

■ With respect to lot 601, defendants failed to show that their use of the easement was continuous for at least 10 years. The evidence showed that, at times, both defendants and their predecessors blocked the driveway with parked vehicles. That shows only that the easement was blocked intermittently, not continuously.

The fact that 15 to 20 feet of the 30-foot easement was covered in large rocks also does not aid defendants. Although the rock pile was in place continuously for many years, it did not block the easement entirely, and thus was not inconsistent with plaintiffs' use of the easement. The parties stipulated that the Currys used the easement on several occasions; that fact shows that neither the vehicles nor the rocks prevented the dominant estate holders from using it. In short, defendants did not establish that they adversely possessed the easement through their own conduct.

■ ■ With respect to lot 703, plaintiffs argue, and we agree, that defendants may not rely on the conduct of a nonparty on different property to establish that they adversely possessed the easement on their own property. Adverse possession is an affirmative act by the party claiming ownership.

*See id.* ("[D]efendants must show that plaintiffs had notice that *defendants* were asserting a claim of ownership of the easement." (Emphasis added.)). The Currys' use of their property is simply irrelevant to defendants' claim of adverse possession. It follows that defendants failed to prove that they adversely possessed the easement across lot 601. The trial court erred in concluding otherwise.

We turn to plaintiffs' second assignment of error, in which they contend that the trial court erred in concluding that the easement was extinguished by abandonment. Plaintiffs argue that defendants failed to adduce clear and convincing evidence of an intention to abandon the easement.

In response, defendants contend that the evidence shows that no owner of lot 701 has used the disputed easement for approximately 30 years. In their view, the evidence of nonuse, together with the facts that none of the deeds conveying the property after the Wilsons acquired it in 1974 mentions the easement and that plaintiffs did not protest the existence of a fence, rocks, and parked vehicles blocking vehicular use of the easement, establish an intent not to use the easement. Indeed, defendants contend, when plaintiffs purchased their property, the easement had already been abandoned.

■■ To prove that an easement has been abandoned, the party alleging abandonment must show, by clear and convincing evidence, that the easement holder "expressed or manifested an intent to make no further use of the easement[.]" *Shields v. Villareal*, 177 Or App 687, 691, 694, 33 P3d 1032 (2001). We note, at the outset, that defendants are mistaken in their contention that no owner of lot 701 has used the easement for 30 years. Plaintiffs testified that they walked the easement yearly for approximately 10 years. In all events, mere nonuse of an easement will not suffice to establish abandonment. *Powers et ux. v. Coos Bay Lumber Co.*, 200 Or 329, 398, 263 P2d 913 (1953); *see also Abbott v. Thompson*, 56 Or App 311, 316, 641 P2d 652, *rev den*, 293 Or 103 (1982) (in addition to nonuse, the party seeking to extinguish the easement must show "either [a] verbal expression

of an intent to abandon or conduct inconsistent with an intention to make further use"). Thus, the fact that plaintiffs' predecessors did not use the easement does not prove that the easement was abandoned.

■　　　Similarly, the fact that the deed from the Wilsons to the Graues (and all of the subsequent deeds conveying lot 701) did not expressly mention easement rights concerning lots 500 and 601 is not, by itself, dispositive. An appurtenant easement is transferred with the benefited property whether it is mentioned in the deed or not. *Tusi v. Jacobsen*, 134 Or 505, 509, 293 P 587 (1930).

■■　　　The only conduct by any of the owners of lot 701 that could possibly suggest an intent to abandon the easement is the Wilsons' subdivision of the tract that they acquired from the Roaches and their sale of lots 700, 701, and 800 to the Graues in 1974. When the owner of property that is benefited by an easement subdivides the property and sells a portion of it, he or she may apportion the easement rights between the subdivided parcels such that the owners of each portion have the right to use the easement—that is, the easement becomes appurtenant to each of the subdivided parcels. *See Restatement (Third) of Property (Servitudes)* § 5.7 (2000) ("When property benefited or burdened by a servitude is divided into separately owned parcels, * * * [e]ach separately owned parcel is entitled to make the uses privileged by an easement or profit[.]"). A subdividing owner may also apportion the easement rights to only some of the subdivided parcels and abandon them as to the rest. *Id.* at § 5.7 comment b ("[Appurtenant easement benefits] can be apportioned by the owner of the property to some parts of the property and abandoned as to other parts of the property. If this is done prior to or at the time of subdivision, the apportionment is effective to determine which parcels receive the benefits.").

Thus, when the Wilsons subdivided the property that they acquired from the Roaches, they could have conveyed the parcel that they sold to the Graues either with or without the easement rights granted by the Roaches. In other words, they could have apportioned the easement rights to both subdivided parcels or they could have apportioned them

entirely to the parcel that they retained and abandoned them as to the portion that they sold to the Graues.

As noted above, at trial, the parties stipulated that, "[w]hen executed, one of the purposes of the disputed easement was to provide [lot 701] with access to Swalley Road on the west by allowing use of the southerly thirty feet of the three properties ([lots] 500, 601 and 703) between [lot 701] and Swalley Road." The Wilsons subdivided the property and conveyed part of it to the Graues essentially simultaneously with their acquisition of the property from the Roaches—in other words, simultaneously with the creation of the easement.[9] Given the timing of the transactions, it stands to reason that, when the Wilsons entered into the easement agreement, they knew that they would be conveying a portion of the benefited property—including lot 701—to the Graues. In light of the parties' stipulation that one of the purposes of the easement was to benefit lot 701, we find that the Wilsons intended to convey the property to the Graues with the easement rights granted by the Roaches. It follows that they did not intend to abandon those rights as to lot 701.[10] Accordingly, we conclude that the easement was not abandoned. The trial court erred in reaching the opposite conclusion.

■ In their third assignment of error, plaintiffs contend that the trial court erred in dismissing their claim for interference with the easement. It is unclear whether the court dismissed the claim merely because it concluded that plaintiffs' easement rights had been extinguished or whether it found

---

[9] Indeed, the Wilsons executed the deed to the Graues three days *before* the Roaches executed the deed to the Wilsons. We note that the parties have made no issue of the relative timing of those conveyances, and we understand the parties' stipulation as including an agreement that the conveyance from the Wilsons to the Graues was valid. This opinion should not be read to mean that a person lawfully may transfer property rights that he or she does not actually hold.

[10] We note that there is some tension between the parties' stipulation and the evidence in the record. When the Wilsons conveyed lots 700, 701, and 800 to the Graues, the deed to the Graues did not include an easement over lot 703, part of the property that the Wilsons retained. Given that it is necessary to cross lot 703 in order for the owner of lot 701 to make use of the easement across lots 500 and 601, the failure to grant an easement across lot 703 gives rise to an inference that the Wilsons did not intend to apportion the easement granted by the Roaches and, thus, that they abandoned it as to the property conveyed to the Graues. Nonetheless, the parties' stipulation controls our determination of the facts for purposes of this case.

that, in all events, defendants did not interfere with the easement. Either way, we conclude that it is necessary to remand for further proceedings. Assuming that the court ruled in defendants' favor on the claim based on its conclusion that the easement had been extinguished, that ruling is inconsistent with our conclusion here. Assuming that the court found that defendants did not interfere with the easement, that finding is not supported by the record.[11] It is undisputed that defendants placed an electric fence across the easement for some period of time and sometimes parked trailers and other vehicles on the driveway. At the very least, the fence unquestionably impeded vehicular travel on the easement and constituted a substantial interference with plaintiffs' ability to use the easement. *See Landauer v. Steelman*, 275 Or 135, 141, 549 P2d 1256 (1976) (to be actionable, interference with an easement must be substantial). It follows that plaintiffs proved their claim for interference. We conclude further that plaintiffs are entitled to injunctive relief barring future interference with the easement.

The question remains whether plaintiffs are entitled to damages. Because it dismissed plaintiffs' claim, the trial court did not address that issue. Whether plaintiffs are entitled to damages turns on factual issues that the trial court should address in the first instance. Accordingly, we remand for further proceedings on the question of damages.

Reversed and remanded.

---

[11] Plaintiffs contend that, on their interference claim, the primary relief that they sought was monetary rather than injunctive. Accordingly, they assert that, rather than reviewing the claim *de novo*, we review to determine whether the trial court's finding of no interference is supported by any evidence. *See D'Abbracci v. Shaw-Bastian*, 201 Or App 108, 117, 117 P3d 1032 (2005) (whether a servient owner's actions constitute substantial interference is a question of fact; the nature of the relief sought generally determines whether a claim is an action at law or in equity and thus determines the standard of review). Defendants agree. We need not determine which was the primary form of relief that plaintiffs sought. Whether we review *de novo* or for any evidence, our conclusion is the same: The record establishes conclusively that defendants substantially interfered with the easement.