Argued and submitted August 31, 2021; general judgment on claims for breach of contract with respect to option to purchase and down payment, unjust enrichment, and fraud in the inducement reversed, money award in general judgment reversed and remanded, otherwise affirmed; supplemental judgment reversed and remanded February 16, 2022

Kirsta S. GILLETT
and Todd L. Gillett,
*Plaintiffs-Respondents,*

*v.*

Michael J. TUCKER
and Deborah Y. Tucker,
*Defendants-Appellants.*

Lane County Circuit Court
18CV58608; A173527

507 P3d 323

In this action arising out of a lease of two apartment buildings, defendants appeal a judgment in plaintiffs' favor on plaintiffs' claims for breach of contract, fraud in the inducement, and unjust enrichment. Defendants also appeal a supplemental judgment awarding plaintiffs prevailing party fees. On appeal, defendants contend that the trial court erred when it concluded that plaintiffs had presented sufficient evidence to support their claims. *Held*: Trial court erred when it ruled in plaintiffs' favor with regard to their claims for fraud in the inducement and unjust enrichment. Further, the trial court erred when it concluded that defendants had breached the contract with plaintiffs by selling the apartment buildings to a third party and not offering to reimburse plaintiffs for certain funds paid by plaintiffs to defendants. However, the trial court did not err when it concluded that plaintiffs had presented sufficient evidence on their claim that defendants had breached the contract with plaintiffs by failing to make major repairs to the apartment buildings. Given the disposition of defendants' appeal of the judgment, the Court of Appeals reversed and remanded the supplemental judgment.

General judgment on claims for breach of contract with respect to option to purchase and down payment, unjust enrichment, and fraud in the inducement reversed; money award in general judgment reversed and remanded; otherwise affirmed. Supplemental judgment reversed and remanded.

Kamala H. Shugar, Judge.

William H. Sherlock argued the cause for appellants. Also on the briefs were Jonathan Hood and Hutchinson Cox.

John R. Roberts argued the cause for respondents. Also on the brief was Rohn M. Roberts.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Armstrong, Senior Judge.

TOOKEY, P. J.

General judgment on claims for breach of contract with respect to option to purchase and down payment, unjust enrichment, and fraud in the inducement reversed; money award in general judgment reversed and remanded; otherwise affirmed. Supplemental judgment reversed and remanded.

**TOOKEY, P. J.**

This action arises out of a lease of property—*viz.*, two apartment buildings—with an option in the lease agreement to purchase the property. Plaintiffs' complaint alleged causes of action for breach of contract, fraud in the inducement, and unjust enrichment. Following a bench trial, the court ruled in favor of plaintiffs on each of those causes of action. The court entered a general judgment containing a monetary award to plaintiffs and a supplemental judgment awarding plaintiffs prevailing party fees pursuant to ORS 21.090. Defendants appeal, raising five assignments of error. For the reasons that follow, with regard to the general judgment, we reverse the judgment as to several of plaintiffs' claims, and remand. With regard to the supplemental judgment, we reverse and remand.

## I.  BACKGROUND

In this case, it is unnecessary to set out the facts in depth. To frame our analysis, however, we note a few pertinent facts at the outset. Other pertinent facts are discussed in the course of analyzing each assignment of error.

The two defendants in this case are husband and wife. Likewise, the two plaintiffs are husband and wife. One of the plaintiffs is the daughter of one of the defendants and stepdaughter of the other defendant. The other plaintiff, prior to the events giving rise to this litigation, was interested in real estate investment and was interested in the lease of the apartment buildings for that reason.

At the time the parties entered the lease giving rise to this litigation, defendants—the lessors—owned the two apartment buildings that are the subject of the lease agreement. Plaintiffs—the lessees—are the counterparty to that agreement.

The lease agreement was executed in August 2007 for a three-year term, after which the lease would continue on a month-to-month basis. Under the lease agreement, plaintiffs took over complete management of the apartment buildings from defendants, including finding tenants, collecting rents, reviewing rental applications, paying utilities, and making certain repairs. Plaintiffs were, in essence, to

act as landlords of the apartment buildings, and were entitled to keep the income generated from their management of the apartment buildings. Defendants were, with limited exception, responsible for "major maintenance and repair" of the two apartment buildings.

The lease agreement specified that plaintiffs were to pay defendants $3,700 per month to "rent" the apartment buildings from defendants. The lease agreement also contained an option for plaintiffs to purchase the apartment buildings for $460,000 but stated that that option "shall not be effective should [plaintiffs] be in default under any terms of this lease or upon any termination of this lease." The lease agreement further provided that, of the $3,700 per month paid as "rent" by plaintiffs to defendants, $550 "would be applied toward [plaintiffs'] down payment to purchase the premises."

After leasing the property for almost 10 years, plaintiffs turned the property back over to defendants in spring of 2016 without exercising their option to purchase the property, and defendants sold the property to a third party in March of 2017. When all was said and done, and the property was turned back over to defendants, the lease of the apartment buildings from defendants had not turned out to be a profitable venture for plaintiffs; to the contrary, plaintiffs lost money over the almost 10-year period that they leased the buildings.

After defendants sold the property to the third party in 2017, plaintiffs filed suit against defendants alleging causes of action for breach of contract, fraud in the inducement, and unjust enrichment. As noted above, following a bench trial, the trial court found in favor of plaintiffs on each of those causes of action, entered a general judgment containing a monetary award to plaintiffs, and entered a supplemental judgment awarding plaintiffs prevailing party fees pursuant to ORS 21.090. Defendants appeal those judgments.

## II.  ANALYSIS

### A.  *Preservation and Standard of Review*

We begin by noting that, "[a]s a general rule, appellate courts will not consider claims of error that were not

raised in the trial court." *State v. Clemente-Perez*, 357 Or 745, 752, 359 P3d 232 (2015); *see* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court * * *."). "To adequately preserve an issue, a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *Clemente-Perez*, 357 Or at 752 (internal quotation marks omitted).

"[A] party without the burden of persuasion on an issue cannot raise 'the sufficiency of the plaintiff's evidence on appeal unless [it] has asserted the legal insufficiency of the evidence in the trial court.'" *Peiffer v. Hoyt*, 339 Or 649, 657, 125 P3d 734 (2005) (quoting *Falk v. Amsberry*, 290 Or 839, 843, 626 P2d 362 (1981)). In a civil case tried to the court—such as this one—a defendant does so by moving for involuntary dismissal under ORCP 54 B(2) or by making a timely equivalent assertion. *Falk*, 290 Or at 845 ("[A] motion under ORCP 54 B(2), or a *timely equivalent assertion*, to the trial court is essential to preserve the issue of sufficiency of evidence * * *." (Emphasis added.)); *see also* ORCP 54 B(2) (providing for dismissal "on the ground that upon the facts and the law the plaintiff has shown no right to relief"). The trial court will then rule on the legal issue, expressly or implicitly, providing a ruling to which error may be assigned on appeal. ORAP 5.45(3) ("Each assignment of error must identify precisely the legal, procedural, factual, or *other ruling* that is being challenged." (Emphasis added.)).[1]

Here, defendants did not move for involuntary dismissal under ORCP 54 B(2), but we have reviewed the record, and we are satisfied that defendants preserved their claims of legal error. Consequently, we review defendants' appeal as if they had made a motion for involuntary

---

[1] The point has been made before, but it bears repeating: In a bench trial, for purposes of preservation, there is a critical distinction between arguing to the trial court as factfinder that it should be *persuaded* to decide the case in a particular way and arguing to the trial court as legal decisionmaker that only one outcome is permitted *as a matter of law*. Although the latter is, in many instances, sufficient for purposes of preservation as to a claim of legal error, the former is not.

dismissal under ORCP 54 B(2). *Larisa's Home Care, LLC v. Nichols-Shields*, 277 Or App 811, 812, 372 P3d 595 (2016), *rev'd on other grounds*, 362 Or 115, 404 P3d 912 (2017).

On appeal from the denial of an ORCP 54 B(2) motion, "we review the entire record to determine whether sufficient evidence was presented to establish a *prima facie* case on the applicable claim, viewing the evidence and all reasonable inferences that may be drawn from it in the light most favorable to plaintiff." *Larisa's Home Care, LLC*, 277 Or App at 813 (internal quotation marks and brackets omitted).

B.   *Breach of Contract*

As noted, the trial court ruled in favor of plaintiffs on their breach of contract claim against defendants. More specifically, the trial court determined that defendants had breached the lease agreements in two respects: first, by selling the property to a third party without "first offering Plaintiffs their contractual option to purchase for a fair price, and without offering to reimburse Plaintiffs the $57,200 in money paid by Plaintiffs to Defendants toward the down payment on the purchase price"; and second, by "fail[ing] to make 'major repairs' which they were under a contractual duty to make."

In their first assignment of error, defendants contend that the trial court "erred in concluding that Plaintiffs proved their breach of contract claim."

1.   *Failure to offer option to purchase and reimburse down payment*

We conclude that the trial court erred when it concluded that plaintiffs had presented sufficient evidence that defendants had breached their contract with plaintiffs by selling the apartment buildings to a third party without "first offering Plaintiffs their contractual option to purchase for a fair price, and without offering to reimburse Plaintiffs the $57,200 in money paid by Plaintiffs to Defendants toward the down payment on the purchase price." That conclusion by the trial court was partially premised on its conclusion that the lease agreement allowed "an indefinite period of time within which [plaintiffs] could exercise their option to purchase."

The lease agreement at issue in this case provided that plaintiffs had "the option to purchase [the property] for the purchase price of $460,000" but that such option "shall not be effective" should plaintiffs "be in default under any terms of this lease or *upon any termination of this lease.*" (Emphasis added.) Thus, under the unambiguous terms of the lease agreement, plaintiffs' option to purchase the property did not survive termination of the lease agreement. *See Pratt v. McNally-Rathbone*, 61 Or App 443, 450, 658 P2d 516, *rev den*, 294 Or 792 (1983) ("In a lease with an option to purchase there is no absolute rule regarding the survival of the option when the lease is breached; it has been considered a question of contractual interpretation.").

Here, as noted, it is undisputed that plaintiffs turned the apartment buildings back over to defendants in the spring of 2016. At that time, they ceased managing the apartment buildings and ceased paying rent to defendants. That terminated the month-to-month lease as a matter of law.

Defendants sold the property to a third party in March 2017. Consequently, at the time defendants sold the property, the lease agreement had been terminated, which, under the unambiguous terms of the lease agreement, meant that plaintiffs no longer had the option to purchase the property under the lease agreement. Accordingly, defendants did not breach the lease agreement by selling the apartment buildings to a third party in March 2017 without first offering plaintiffs an option to purchase the apartment buildings.

The trial court's ruling further reflects that, in its view, defendants had an obligation under the lease agreement to offer to "reimburse Plaintiffs the $57,200 in money paid by Plaintiffs to Defendants toward the down payment on the purchase price" prior to selling the apartment buildings to a third party. As noted, the lease agreement required that plaintiffs pay "rent" for the apartment buildings of $3,700 per month, of which $550 would "be applied to [plaintiffs'] down payment to purchase the premises." Plaintiffs never exercised their option to purchase the property, and no provision of the lease agreement required defendants to

refund any portion of the "rent" payments made by plaintiffs to defendants in the event that plaintiffs did not exercise their option to purchase the property before terminating the lease agreement.

Thus, we conclude that the trial court erred when it concluded that plaintiffs had presented sufficient evidence that defendants had breached their contract with plaintiffs by selling the apartment building to a third party without "first offering Plaintiffs their contractual option to purchase for a fair price, and without offering to reimburse Plaintiffs the $57,200 in money paid by Plaintiffs to Defendants toward the down payment on the purchase price."

2.   *Failure to make "major repairs"*

With regard to the second breach at issue in this appeal—*viz.*, that defendants breached the lease agreement with plaintiffs by "fail[ing] to make 'major repairs' which they were under a contractual duty to make"—we reach a different conclusion. With regard to that breach, the trial court concluded that plaintiffs had presented sufficient evidence that, during the course of the lease, defendants "failed to repair the roof and re-pave the parking lot, both of which * * * are major structural repairs and that under the contract such repair was Defendants' responsibility."

On appeal, defendants do not dispute that the lease agreement required them to make "major repairs." Rather, defendants contend that the trial court's conclusion that plaintiff's had presented sufficient evidence that defendants had breached the lease agreement by failing to make major repairs was erroneous because (1) the ruling was "not supported by the evidence," and (2) "plaintiffs did not plead this theory and the parties did not argue this theory."

We reject defendants' contention that the trial court's ruling that defendants breached the lease agreement by failing to make "major repairs" was not supported by sufficient evidence. In light of our standard of review, the record contains sufficient evidence to allow a factfinder to determine that defendants did not make repairs to the property during the pendency of the lease agreement—including to

the roof and parking lot—that were their responsibility to make under the terms of the lease agreement.

Faring no better is defendants' contention that the trial court erred in ruling that defendants were not entitled to dismissal on the theory that they had breached the lease agreement with plaintiffs by failing to make "major repairs" that they were contractually obliged to make because "plaintiffs did not plead this theory and the parties did not argue this theory." In support of this argument, defendants assert that "they did not consent to trying" the issue of their failure to make repairs in connection with plaintiffs' breach of contract claim.

Defendants are correct that plaintiffs' complaint did not include an allegation of defendants' failure to make "major repairs" in their breach of contract claim against defendants. But that theory was presented to the court throughout the trial. It was raised in plaintiffs' trial memorandum. It was raised in plaintiffs' opening statement. During trial, evidence was adduced as to whose responsibility it was to make "major repairs" under the lease agreement and what repairs constituted "major repairs." And, during closing argument, plaintiffs argued that they were entitled to recover damages under their breach of contract claim due to defendants' failure to make repairs.

Thus, defendants implicitly consented to litigating the theory of breach of contract based on defendants' failure to make "major repairs" under the lease agreement. ORCP 23 B provides that,

> "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; *but failure so to amend does not affect the result of the trial of these issues*."

(Emphasis added.) Particularly, we note that defendants have not asserted any prejudice caused by any "implied

amendment" to the complaint in this case and that both sides presented evidence regarding needed repairs.[2] *See Fraker v. Benton County Sheriff's Office*, 214 Or App 473, 482-84, 166 P3d 1137, *adh'd to on recons*, 217 Or App 159, 174 P3d 1111 (2007) ("To determine if a party has impliedly consented to trying an issue not raised in the pleadings * * * the test should be whether the defendant would be prejudiced by the implied amendment, *i.e.*, whether [they] had a fair opportunity to defend and whether [they] could offer any evidence if the case were to be retried on a different theory." (Internal quotation marks and brackets omitted.)). Thus, defendants' contention on appeal that "plaintiffs did not plead this theory" of contract breach—*i.e.*, failure to make "major repairs"—does not provide a basis for reversal. ORCP 23 B.

## C. *Fraud in the Inducement*

The trial court ruled in favor of plaintiffs on their claim against defendants for fraud in the inducement. In their second assignment of error, defendants contend that the trial court erred in concluding that plaintiffs presented sufficient evidence to support their claim for fraud in the inducement.

During trial, one of the plaintiffs testified that, during a meeting at defendants' house, prior to signing the lease agreement, one of the defendants talked about "what a good deal" the lease agreement was going to be for plaintiffs and about how that defendant "wished that somebody was able to do this for him when he was younger." The other plaintiff testified that, at that same meeting, plaintiffs and defendants talked about "what a good deal this could be for [plaintiffs] financially" and that "it would just be a good deal for everyone."

---

[2] Concerning lack of prejudice, it bears mentioning that defendants asserted a counterclaim for negligence against plaintiffs premised on plaintiffs' purported failure to "maintain [the property] in good condition and repair." As part of that counterclaim, defendants asserted, among other issues with the property at the time plaintiff turned it back over to defendants, that the "roofs needed repair or replacement" and the "parking lot was in need of repairs." That is, *both parties* litigated—and had incentive to litigate—the condition of the roofs and parking lot of the apartment buildings during the trial in this case.

Those statements constitute the purportedly fraudulent statements at issue in this case. As noted above, when all was said and done, and the lease agreement was terminated, the lease of the apartment buildings from defendants was not a profitable venture for plaintiffs; plaintiffs lost money. Thus, the lease had not turned out to be a "good deal" for plaintiffs.

On appeal, defendants argue that the trial court erred because the statements made by defendants to plaintiffs prior to plaintiffs signing the lease agreement are not "misrepresentations" but "opinions," and "Oregon law is clear that statements of opinion are not actionable."

As a general rule, "statements of opinion are not actionable, even though false." *Haag v. Cembellin*, 89 Or App 75, 78, 748 P2d 143 (1987), *rev den*, 305 Or 273 (1988). However, expressions of opinion may be considered misrepresentations of fact where the parties are "on unequal footing and do not have equal knowledge or means of knowledge." *Frank v. Fitz Enterprises, Inc.*, 106 Or App 183, 186, 806 P2d 720 (1991).

In *Frank*, we held that a statement to the plaintiff by the defendant corporation's president—prior to the plaintiff leasing a gasoline service station from the defendant to operate as a "cardlock station"—that the station would "have minimum sales of 15,000 gallons a month," was not an "actionable misrepresentation," where the parties "were not on such an unequal footing as to make defendant's representation actionable." *Id.* We also noted that the "circumstances in which defendant's statement was made show that it was necessarily a guess as to what might be accomplished in the future." *Id.* at 186-87.

In this case, we conclude that, as a matter of law, defendants' statements to plaintiffs were not actionable misrepresentations but opinions about what might be accomplished in the future. Although plaintiffs ultimately lost money during the course of their nearly decade-long lease of the apartment buildings, when entering into the lease agreement in 2007, neither plaintiffs nor defendants had any means of knowing what the future would hold for the

value of the property; and, by entering the lease agreement in 2007, plaintiffs locked-in an option to purchase the property for a price of $460,000 regardless of the market value of the property when that option was exercised. That is, it was not a foregone conclusion in 2007 that the lease would not be a "good deal" for plaintiffs. Further, we observe that this is not a case where the parties had "unequal means of knowledge" regarding the condition of the subject properties or the income that could be generated from the apartments at the beginning of the lease agreement—plaintiffs simply failed to inquire as to those points prior to signing the lease agreement.

Consequently, we conclude that the trial court erred when it concluded that there was sufficient evidence to support plaintiffs' claim for fraud in the inducement.

D.  *Unjust Enrichment*

The trial court ruled that plaintiffs had presented sufficient evidence on their claim against defendants for unjust enrichment, which it characterized as a "quasi-contractual claim." In the trial court's view, defendants were unjustly enriched because, under the lease agreement, defendants received "significant" financial benefits, and defendants "conferred unto Plaintiffs minimal benefits such that the conferral was practically non-reciprocal." As the trial court saw it, defendants "should reasonably have expected to reimburse Plaintiffs for these benefits, regardless of whether a contract existed." In their third assignment of error, defendants challenge that ruling.

In *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or 115, 127, 404 P3d 912 (2017), the Supreme Court directed that unjust enrichment claims should be decided on a "case-by-case basis." The court explained that "Oregon courts should examine the established legal categories of unjust enrichment as reflected in Oregon case law and other authorities to determine whether any particular enrichment is unjust." *Id.* at 132. One source of guidance on which the court relied is the *Restatement (Third) of Restitution and Unjust Enrichment* (2011). *Larisa's Home Care, LLC*, 362 Or at 133.

In this case, we believe *Restatement* section 2 is instructive. That section provides:

> "(1)  The fact that a recipient has obtained a benefit without paying for it does not of itself establish that the recipient has been unjustly enriched.
>
> "(2)  *A valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment.*"

*Id.* (emphasis added); *see also id.* comment c ("Restitution is accordingly subordinate to contract as an organizing principle of private relationships, and the terms of an enforceable agreement normally displace any claim of unjust enrichment within their reach."); *Ken Hood Construction v. Pacific Coast Construction*, 203 Or App 768, 772, 126 P3d 1254, *rev den*, 341 Or 366 (2006) ("It is well established that there cannot be a valid, legally enforceable contract and an implied contract covering the same conduct." (Internal quotation marks omitted.)).[3]

The trial court erred when it determined that plaintiffs could prevail on their claim for unjust enrichment notwithstanding the valid, enforceable contract between plaintiffs and defendants regarding their obligations to each other with regard to the apartment buildings. As noted above, "[a] valid contract [that] defines the obligations of the parties as to matters within its scope, displac[es] to that extent any inquiry into unjust enrichment." *Restatement* § 2.

In arguing for a different result, plaintiffs point to *Restatement* section 27, which provides:

> "If the claimant makes expenditures to maintain, improve, or add value to property that the claimant reasonably expects to retain or to acquire, and (because such expectation is frustrated) another person becomes the unintended beneficiary of the claimant's expenditure, the claimant is entitled to restitution from the other as necessary to prevent unjust enrichment."

---

[3]  There are exceptions to the general rule set forth in *Restatement* section 2. *Restatement* section 39, concerning "profit resulting from opportunistic breach," provides one such exception, applicable in "exceptional cases." *Id.* § 39. Given the particular breach at issue in this case, we do not understand *Restatement* section 39 to be applicable.

The illustrations in the *Restatement*—and particularly illustration 22—however, demonstrate that, generally, section 27 is not applicable where, as here, a party's option to purchase property is contained in a lease, the option terminates upon termination of the lease, and the lease terminates prior to the party exercising their option to purchase the property. *Restatement* § 27 illustration 22.[4] Thus, we reject plaintiffs' argument regarding *Restatement* section 27.

### E.  *Statute of Repose*

In their fourth assignment of error, defendants raise a statute of repose argument regarding plaintiffs' fraud in the inducement claim. Our disposition of defendant's second assignment of error—regarding plaintiffs' fraud in the inducement claim—obviates the need to address defendants' fourth assignment of error.

### F.  *Monetary Award*

In their fifth assignment of error, defendants assert that the trial court erred in awarding plaintiffs the monetary award that it did. The trial court determined that "the amounts owing to Plaintiffs total $209,754.71, based on unjust enrichment, fraud in the inducement and breach of contract." The court then made various deductions from that amount, ultimately awarding plaintiffs $180,484.95.

As detailed above, we conclude that the trial court erred when it ruled in favor of plaintiffs on their claim that defendants breached the lease agreement by selling the property to a third party without "first offering Plaintiffs their

---

[4] Illustration 22 of *Restatement* section 27 provides:

"Tenant occupies Blackacre under a five-year lease with an option to purchase at any time during the lease term, so long as Tenant is not in substantial default. After farming the land for two years and making valuable improvements, Tenant defaults in payment of rent and taxes. Landlord terminates the lease, and Tenant surrenders possession. Tenant attempts to exercise the purchase option notwithstanding his default under the lease; alternatively, Tenant seeks restitution for the value added to Blackacre during his tenancy. The court determines that the purchase option terminated at the same time as the lease. Tenant assumed the risk that expenditures for improvements would benefit Landlord if Tenant, without the fault of Landlord, failed to exercise the purchase option. Tenant has no claim under this section."

contractual option to purchase for a fair price, and without offering to reimburse Plaintiffs the $57,200 in money paid by Plaintiffs to Defendants toward the down payment on the purchase price"; when it ruled in favor of plaintiffs on their claim against defendants for fraud in the inducement; and when it ruled in favor of plaintiffs on their claim against defendants for unjust enrichment. The trial court did not, however, err when it concluded that plaintiffs had presented sufficient evidence that defendants had breached their contract with plaintiffs by "fail[ing] to make 'major repairs' which they were under a contractual duty to make."

From the trial court's ruling in this case, we are unable to determine what amount of plaintiffs' monetary award (if any) was attributable to defendants' breach of the lease agreement through their "failure to make 'major repairs' which they were under a contractual duty to make." Consequently, we reverse the monetary award and remand for a determination of damages stemming from that breach of contract by defendants. *Johnston v. Cornelius*, 230 Or App 733, 745, 218 P3d 129 (2009), *rev den*, 348 Or 114 (2010) ("Whether plaintiffs are entitled to damages turns on factual issues that the trial court should address in the first instance.").[5]

---

[5] On appeal, defendant makes various arguments as to how the trial court erred in determining the monetary award to plaintiffs in this case. We note that, in reviewing the trial court's opinion, it appears to us that the trial court's calculation of the monetary award was based in large part on its determination that plaintiffs had proven their claim for unjust enrichment.

We decline to address defendants' various arguments as to how the trial court erred in determining the monetary award to which plaintiffs were entitled. In our view, the issues identified by defendants regarding the trial court's calculation of plaintiffs' monetary award are unlikely to arise on remand, given our conclusion that the trial court erred in ruling in plaintiffs' favor on their unjust enrichment claim, their claim for fraud in the inducement, and their claim that defendants had breached the lease agreement by selling the property to a third party without "first offering Plaintiffs their contractual option to purchase for a fair price, and without offering to reimburse Plaintiffs the $57,200 in money paid by Plaintiffs to Defendants toward the down payment on the purchase price."

On remand, the sole issue will be the damages, if any, required to compensate plaintiffs for the loss caused by defendants' breach of the lease agreement by their failure "to make 'major repairs' which they were under a contractual duty to make." Damages for that breach present a different question than restitution owed for unjust enrichment, which, as noted, we understand to have driven the trial court's reasoning regarding the monetary award. *Compare, e.g., Sullivan v. Oregon Landmark-One, Ltd.*, 122 Or App 1, 5, 856 P2d 1043 (1993) ("The purpose

G.  *The Supplemental Judgment*

As noted above, in a supplemental judgment, the trial court awarded plaintiffs prevailing party fees. Given our disposition in this case, we reverse and remand the supplemental judgment.

### III.  CONCLUSION

We conclude the trial court erred when it ruled in plaintiffs' favor with regard to their claim that defendants breached the lease agreement by selling the property to a third party without "first offering Plaintiffs their contractual option to purchase for a fair price, and without offering to reimburse Plaintiffs the $57,200 in money paid by Plaintiffs to Defendants toward the down payment on the purchase price"; erred when it ruled in favor of plaintiffs on their claim against defendants for fraud in the inducement; and erred when it ruled in favor of plaintiffs on their claim against defendants for unjust enrichment. We also conclude that the trial court did not err when it concluded that plaintiffs had presented sufficient evidence on their claim that defendants had breached the lease agreement by "fail[ing] to make 'major repairs' which they were under a contractual duty to make." Additionally, due to the trial court's errors, we reverse and remand the trial court's monetary award. And, we reverse and remand the supplemental judgment.

General judgment on claims for breach of contract with respect to option to purchase and down payment, unjust enrichment, and fraud in the inducement reversed; money award in general judgment reversed and remanded; otherwise affirmed. Supplemental judgment reversed and remanded.

---

of awarding damages for breach of contract is to compensate for loss to the injured party." (Footnote omitted.)) *with Hershiser v. U. S. Fidelity & Guaranty*, 276 Or 815, 821, 556 P2d 663 (1976) ("The measure of restitution for a benefit conferred on another is the value of the benefit to the recipient, not the expense to the party who confers it." (Internal quotation marks omitted.)).